ADAIR *et al.*, commissioners, *v.* ELLIS *et al.*

Insolvent costs of the solicitor of the city court of Atlanta are not part of the "expenses of courts" within the meaning of the constitution ; and an act of the legislature requiring the commissioners of Fulton county to levy a tax to pay a certain proportion of the amount claimed by two ex-solicitors of the city court of Atlanta to be due them on account of insolvent costs not collected from the fine and forfeiture fund, is unconstitutional and void, whether the words "expenses of courts" are given the common construction placed upon them at the time they were incorporated in the constitution, or (as would seem proper from the power to levy taxes involved) a strict construction.

(*a*) It is unnecessary in this case to determine whether or not the legislature has the power to define what are expenses of courts, as the act in question does not say the claims of the ex-solicitors are such expenses, nor indicate that they are to be so regarded.

(b) The law providing the means and manner of payment of the so-licitor of the city court of Atlanta, is a general law applicable to the subject-matter, and is within the constitutional. inhibition. against the enactment of special laws where provision has been made by general law.

October 14, 1889.

.Constitutional law.   Words and phrases.   Costs. Officers.  Courts.  Taxes.  Construction.  Before Judge MARSHALL J. CLARKE.  Fulton superior court.  September term, 1889.

Reported in the decision.

W. S. THOMSON, for plaintiffs in error.

N. J. HAMMOND, H. C. GLENN and W. D. ELLIS, *contra*.

SIMMONS, Justice.

It appears from the record in this case that W. D. Ellis and H. C. Glenn, ex-solicitors of the city court of Atlanta, claim that the county of Fulton is indebted to them, as such solicitors, certain amounts on account of insolvent costs not collected by them from the fines and forfeitures fund.  The legislature passed an act, approved August 3d, 1889, requiring the commissioners of roads and revenues of Fulton county to levy a tax upon the property of the people of that county, to pay a certain proportion of the amount claimed by Ellis and Glenn to be due them by the county.   Ellis and Glenn applied to the county commissioners to levy this special tax, and the application was refused by them on the ground that the act aforesaid was unconstitutional, null and void, because the legislature had no power or authority, under the constitution, to require them to levy a tax for this purpose.   Ellis and Glenn then applied to the superior court of the county for a *mandamus* to compel the county commissioners to levy this tax.   Upon the hearing of the *mandamus*, the court below made the same absolute, and ordered the commissioners to

v 83-30

levy the tax. The commissioners excepted to this judgment and brought the case here for review.

It was contended by counsel for the plaintiffs in error that under article 7, section 6, paragraph 2, of the constitution (Code, §5190), the legislature had no power or authority to require this tax to be levied. That section reads as follows: "The General Assembly shall not have power to delegate to any county the right to levy a tax for any purpose, except for educational purposes in instructing children in the elementary branches of an English education only; to build and repair the public buildings and bridges; to maintain and support prisoners; to pay jurors and coroners; and for litigation, quarantine, roads and expenses of courts; to support paupers and pay debts heretofore existing." Counsel for the defendants in error contended that the power to pass the act to require this tax to be levied, was given to the legislature by this paragraph of the constitution, that these insolvent costs were "expenses of courts," and that the legislature, therefore, had the right to authorize and require the county authorities to levy a tax for the payment of the same. It was admitted by the counsel for defendants in error in his argument before us that if the insolvent costs of solicitors-general were not "expenses of courts," the act was unconstitutional; so the only question for us to determine is, whether such costs are "expenses of courts."

The provision now under consideration, and several others in the present constitution in regard to the taxing power, are new ones. No such restrictions as are now contained in the constitution were ever before thrown around the counties, cities and the legislature. It is a matter of public history that when the convention met in the year 1877, the counties, towns and cities of the State were largely in debt. Some of them were so much in debt that they were compelled to com-

promise with their creditors. The legislature had the power, under the former constitution, to authorize counties and cities to levy taxes upon the people for any object which might seem to it proper, and it had used this power very freely, so much so that, as said before, many counties, cities and towns in the State were heavily in debt. The members of the convention of 1877, knowing these facts, determined to put the restriction now contained in the constitution upon the power of the legislature, in order to prevent indiscriminate levies of taxes, and prevent counties, towns and cities from incurring further indebtedness, except as provided in another paragraph of the constitution. The section now under consideration was one of the restrictions put upon the legislature to restrain it from authorizing counties to levy taxes except for the objects enumerated therein. One of these objects, as declared in that paragraph, is "expenses of courts." The meaning of these words is not to be enlarged by construction, but they are to receive the usual and common construction placed upon them at the time they were incorporated in the constitution. We are inclined to think that where power to levy taxes is involved, the courts should give it a strict construction. But to give these words their usual and common meaning, we think it was not intended in the use thereof to embrace the fees and costs of solicitors-general. As far as we know or can ascertain, the fees and costs of solicitors-general have never been regarded as expenses of court to be paid from the county treasury. The law of the State before and at the time this constitution was adopted and ratified by the people, was that the fees and costs of the solicitors-general were to be paid from the "fine and forfeiture fund," and the law under which these defendants in error were appointed was that their compensation should be paid from that fund. As far as we

know, no county in this State, before the adoption of
the present constitution, ever paid insolvent costs to
such officers, except when required by some local act.
So far as we know, no judge, in approving the bill of in-
solvent costs of the solicitor-general, ever ordered it to
be paid by the county treasurer out of any funds in his
hands except the fines and forfeitures fund. So far as
we know, no solicitor-general in 'this State ever col-
lected a bill for insolvent costs from any county fund
in the treasurer's hands other than the "fine and for-
feiture" fund. The expenses of courts, as commonly
understood by the profession and the people when this
paragraph of the constitution was adopted, were the
payment of jurors, bailiffs, witnesses in criminal cases,
lights, fuel, stationery, etc.; but no one ever under-
stood or claimed that the insolvent costs of solicitors-
general were expenses of court. If they had been so
regarded, the question would certainly have been made
by some one of the numerous lawyers of the State who
have acted as solicitors-general, for it is well-known,
by the profession at least, that nearly every one of them,
I might say all of them, have gone out of office hold-
ing large claims for insolvent costs. It is argued by
the able counsel for the defendants in error that unless
such costs are held to be "expenses of courts," the
solicitors-general will receive little or no compensation
for the valuable services which they render the public,
and that it would be a great hardship upon them to
compel them to serve the public without compensation.
All this may be true, and doubtless is true in many
instances; but we do not think that is an argument
which should influence us in the construction of a con-
stitutional provision. It is our duty to declare what
the law is, and not what it should be. The hardship in
any particular case should not influence the court in its
construction of the law. That argument should be ad-

dressed to the law-making power.   Clerks and sheriffs have large sums of insolvent costs due them.   In these days the large majority of the criminals who are tried in the courts are wholly insolvent.   In each case tried the clerk and sheriff are entitled to costs, to be paid, like the solicitor-general's, out of the "fine and forfeiture fund."   We have no doubt that every clerk and sheriff in this State who has been in office any length of time has large amounts of insolvent costs due him which he will never collect.   If the insolvent costs of the solicitor-general are "expenses of courts," why should not the insolvent costs of the clerk and sheriff be also embraced therein, and why should not the legislature pass a general law directing the county authorities to levy taxes for the payment thereof?   If these insolvent costs of the solicitors-general or clerk and sheriff are expenses of court, what was the necessity of the legislature passing this act?   Why not apply to the court for an order in the first instance, requiring the county authorities to pay them?   If they are expenses of court, there is no need of a special act of the legislature, because the court has power now to compel the payment of all necessary expenses of the court.

It may be argued, however, that the legislature has the power to determine and define, under this paragraph, what are expenses of courts, and that the courts would be bound by its definition.   This may or may not be true.   It is unnecessary for us to determine in this case whether the legislature can enlarge the common and usual meaning of these words or not.   It is sufficient for us to say that in this case the legislature.did not say that the claims of the defendants in error were expenses of court.   The act speaks of them as "claims," due them as the ex-solicitors of the city court of Atlanta, and undertakes to authorize the compromise and adjustment thereof.   It does not say a word about these claims be-

ing expenses of court. If they were expenses of court they should have been paid in full, and not twenty per cent. thereof as the act provides the county commissioners in their discretion may pay. Moreover, the law providing the means and manner of payment of the solicitors-general of the city court of Atlanta is a general law of the State applicable to the subject-matter, and the legislature is forbidden by art. 1, sec. 4, par. 1 of the constitution (Code, §5027) to enact special laws where provision has been made by the general law. This is clearly a special act for the benefit of Ellis and Glenn, changing the general law as to the payment of insolvent costs in the city court of Atlanta.

We conclude therefore, that the insolvent costs of the solicitor of the city court of Atlanta are not a part of the expenses of the court; and as the constitution forbids the legislature to grant power to the county authorities to levy a tax for any purposes other than those enumerated therein, the insolvent costs of solicitors-general not being one of these purposes, the legislature had no power or authority to pass this act requiring the county authorities of Fulton county to levy this tax, and that the act is unconstitutional, null and void.

Let us adhere to a strict construction of the constitution, at least so far as taxing the people is concerned. No man knows how soon the legislature, city governments and county governments may be in the hands of non-tax payers. These restrictions which are now so much complained of will then be a shield to the property-owners of the State, and a barrier against those who desire to put their hands in the public treasury.

*Judgment reversed.*