## CLARK v. BLACK.

1. Where the title of an act provides for the establishment of a court, the appointment of a judge and a solicitor, and the definition of their powers and duties, a provision in the body of the act fixing the fees of the solicitor and the mode of their payment is germane to the general object of the act, and does not offend the constitutional inhibition against the enactment of a law containing matter different from what is expressed in the title.

2. The General Assembly is expressly empowered to establish such courts as in its wisdom it may deem proper. In the establishment of a city court, uniformity in procedure, jurisdiction, or powers is not required. The constitutional provision respecting writs of error to the Court of Appeals from the city courts of Atlanta and Savannah and other like courts concerns only the right of review by direct bill of exceptions, and contains no restriction upon the legislature in fixing the compensation of the officers of other city courts in a manner different from that prescribed for the officers of the city courts of Atlanta and Savannah.

3. The fees of the solicitor of the city court of Richmond county are an expense of that court and lawfully payable from the funds raised to defray the expenses of that court.

4. The provision in the act establishing the city court of Richmond county for the payment of the fees of the solicitor "out of any funds which may be in the treasury," considered in connection with the act of 1894, is to be construed harmoniously with the general law that taxes are to be levied for specific uses and applied only to such uses; and when thus construed, the fees of the solicitor are to be paid from funds legally available for that purpose. The pleadings admit that there is in the treasury a legally available fund more than sufficient to pay the solicitor's demands.

5. When a case is terminated in the city court of Richmond county by a judgment of nolle prosequi, the solicitor is entitled to his fee for drawing the accusation and entering the nolle prosequi, and the judgment of the court allowing the entry of nolle prosequi can not be collaterally attacked by the treasurer of the county, upon whom the law devolves the duty of paying the solicitor's costs when duly audited.

6. The offenses of stabbing, larceny from the person, and larceny from the house are reduced felonies under the act of March 20, 1866, and the solicitor may charge felony costs in such cases.

7. Under the admitted facts the applicant was entitled to the writ of mandamus.

SEPTEMBER 22, 1911.

Mandamus. Before Judge Walker. Richmond superior court. May 16, 1911.

*Salem Dutcher* and *William K. Miller*, for plaintiff in error.

*W. H. Barrett, E. H. Callaway*, and *Boykin Wright*, contra.

EVANS, P. J. The solicitor of the city court of Richmond county applied for a writ of mandamus to compel the treasurer of that county to pay his fees, which had been audited and approved by the judge of the city court. The treasurer resisted the issuance of the writ, attacking the constitutionality of the act creating the court, and denying the liability of the county for any of the items of cost. The case was heard upon an agreed statement of facts, and the mandamus was made absolute. The treasurer excepted.

1. The city court of Richmond county was established by the act of September 22, 1881 (Acts 1880-1881, page 574) ; the title of the act being "An act to establish a city court in the county of Richmond, to provide for the appointment of a judge and solicitor thereof, and to define their powers and duties." The fourth section of the act was as follows: "There shall be a solicitor of the said city court, who shall be appointed by the Governor, by and with the advice and consent of the Senate, and shall hold his office for the term of four years; vacancies in the office of the solicitor of the said city court shall be filled in the same manner as is herein prescribed for the filling of vacancies in the office of the judge of the said court; it shall be the duty of the said solicitor to represent the State of Georgia in all cases in the said city court in which the State shall be a party, and in the Supreme Court in such cases upon writs of error from said city court. He shall, for his services in such cases, receive the same fees as are allowed the solicitor-general for similar services before the superior courts and Supreme Court. His fees in the city court shall be paid out of fines and forfeitures when there is a sufficiency of money arising from those sources for that purpose. But all bills for insolvent costs that may become due to said solicitor, when examined and approved by the judge of the said court, shall

upon presentation, be paid by the treasurer of the county out of any funds which may be in the treasury. The fees of said solicitor, for services rendered in the Supreme Court, shall be paid by the State, on the warrant of the Governor, in all cases where the said solicitor shall present the certificate of the clerk of the Supreme Court as to services, and the clerk of said city court to the effect that the defendant was acquitted or was unable to pay cost." By the act approved December 15, 1894 (Acts 1894, p. 215), it was enacted that "The treasurer of Richmond county shall pay to the solicitor of the city court of Richmond county his bills of insolvent costs for services rendered in criminal cases in the city court of Richmond county, upon presentation of itemized bills, audited and approved by the presiding judge; provided the sum paid shall not exceed in any one year the sum of two thousand dollars." It is contended that the provision fixing the compensation of the solicitor and the mode of payment violates the constitutional ·inhibition against the enactment of any law containing matter different from what is expressed in the title. We do not think this criticism is well founded. It was never intended that the title of the act should embody every detail of the law, but should embrace a description of the general object of the proposed legislation. Details of the general object of the legislation, which are of a subsidiary nature and germane to the subject-matter expressed in the title, may properly be elaborated in the body of the act without being obnoxious to the criticism of plurality of subject-matters. The practical question in every case is the correspondence of the subject-matter in the title and in the body of the act, and is to be determined in view of the subject-matter to which the legislation relates as expressed in the title. The subject-matter of the legislation in the instant case is the establishment of a court, the appointment of the officers, and the definition of their powers and duties. It is not to be expected that the officers are to serve without compensation, and the fixing of that compensation and the mode of payment is germane to the general object of the legislation as expressed in the·title. *Carroll* v. *Wright,* 131 *Ga.* 745 (63 S. E. 260); *Nolan* v. *Central Georgia Power Company,* 134 *Ga.* 205 (67 S. E. 656); *Smith* v. *Bohler,* 72 *Ga.* 546.

2. It is urged that the act creating the city court of Richmond county is unconstitutional, because that court is not like the city

courts of Atlanta and Savannah, as in the acts creating those courts neither of the counties in which those cities are located is made liable for the insolvent costs of the solicitor. We fail to perceive the force of this attack on the act. The constitution declares that "The judicial powers of this State shall be vested in a Supreme Court, a Court of Appeals, Superior Courts, Courts of Ordinary, Justices of the Peace, commissioned notaries public, and such other courts as have been or may be established by law." Civil Code (1910), § 6497. The General Assembly is here given express authority to establish such courts as in the legislative wisdom may be deemed proper. If the court to be established be classed as a city court, it is not required by the constitution that its jurisdiction, powers, proceedings, and practice shall be uniform with those of other city courts. Civil Code (1910), § 6527. But before a judgment of a city court can be reviewed by the Court of Appeals by direct writ of error, such city court must be a "like court" to the city courts of Atlanta and Savannah as constituted at the time of the ratification of the constitution. Civil Code (1910), § 6506. This constitutional provision concerns only the right of review of a judgment of a city court by direct bill of exceptions, and has no application to the power of the General Assembly to provide for the compensation of the officers of a city court in a manner different from that prescribed for the payment of the officers of the city courts of Atlanta and Savannah.

3. It was within the power of the legislature to provide that the salary of the solicitor, in whole or in part, should be paid from the county treasury. His salary was an expense of court, to pay which a tax could be constitutionally levied. *Clark* v. *Eve*, 134 *Ga.* 788 (4), 789 (68 S. E. 598).

4. Another attack on the validity of the act establishing the city court of Richmond county is that the act is repugnant to the constitutional mandate that "no special law shall be enacted in any case for which provision has been made by an existing general law." The repugnancy is said to result from the provision that the insolvent costs of the solicitor "shall, upon presentation, be paid by the treasurer of the county out of any funds which may be in the treasury," which, it is contended, conflicts with the general law requiring taxes to be levied for specific purposes and to be used for such purposes respectively as levied, and for none

other.   Civil Code (1910), §§ 516, 518.   Even if the act establishing the city court of Richmond county be held to be a special law within the purview of this constitutional provision, and conceding that the alleged repugnancy does exist, the effect would be to nullify, not all of the fourth section, but only that part which authorizes payment "out of any funds which may be in the treasury." That is to say, the insolvent costs would be payable out of the treasury, and the funds applicable to their payment would be those appropriated by the general law.   But this objection is completely answered and dissipated by the act of 1894, which makes it the duty of the treasurer of Richmond county to pay to the solicitor insolvent costs to the extent of two thousand dollars, when duly audited and approved by the presiding judge, without specifying any funds out of which the same are to be paid.   By this act manifestly the legislature intended the payment of the solicitor's fees from legally available funds, viz.: funds arising from taxes levied to defray court expenses.   It is admitted that the county treasurer had in his possession funds raised by taxation, for payment of expenses of the city court, more than sufficient to pay the applicant's demand.

5.   The fees claimed by the solicitor included charges for costs of $5.25 in each case wherein a judgment of nolle prosequi was entered.   The act declared that the solicitor for his services was to receive the same fees as are allowed the solicitor-general for similar services.   The law allows the solicitor-general a fee of $5.00 for each person indicted and twenty-five cents for the entering of a nolle prosequi.   Penal Code (1910), § 1126.   Where a case was terminated by the entry of a nolle prosequi, the solicitor was entitled to the fee charged, and the judgment of the court allowing the entry of nolle prosequi has the same force of conclusiveness ordinarily incidental to judgments, and can not be collaterally attacked.   *Peeples* v. *Walker,* 12 *Ga.* 353; Penal Code (1910), § 982.

6.   The solicitor's cost bill also embraced charges for felony costs in cases of stabbing, larceny from the person, and larceny from the house.   The contention is that only misdemeanor costs were legally chargeable in such cases.   Under the Code of 1863, § 4268, the offense of stabbing was punishable by fine or imprisonment in jail, or both, or imprisonment in the penitentiary for a term of not less than one or more than two years.   Larceny from

the person was punishable by confinement in the penitentiary for a term of years. Code of 1863, § 4309. Larceny from the house, whether committed by breaking any house with intent to steal, or by entering any house with intent to steal, or by stealing from a house after having broken into the same, or by stealing from any house after having entered it, as defined in the Penal Code (1910), §§ 175, 176, 177, 178, 179, was punishable, under the Code of 1863, by confinement in the penitentiary for a term of years. Code of 1863, §§ 4312, 4313, 4314, 4315. See *Heard* v. *State,* 120 *Ga.* 848 (48 S. E. 311). The act approved March 20, 1866 (Acts 1865-6, p. 233), declared that "the crimes defined in the following sections of the Penal Code [Code of 1863] as felonies, and punishable by imprisonment in the penitentiary, shall henceforth be reduced below felonies, and punished in the manner hereinafter set forth, viz.: sections . ." 4268, when not within the proviso to said section; sections 4309, 4312, 4313, 4314, 4315; and the next section provided for a misdemeanor punishment. By the act approved December 15, 1866, it was provided that the fees of the solicitor-general for prosecuting in the superior court the felonies which were reduced to misdemeanors by the act of March 20, 1866, shall remain the same as they were before the passage of the act. Penal Code (1910), § 1126. These specific offenses were thus declared to be felonies by the act of the legislature mitigating their punishment, and though reduced to misdemeanors by the act of 1866, the solicitor-general's fees were to be charged as if they were still felonies.

7. Applying the foregoing rulings to the pleadings and admitted facts, there was no error in granting the mandamus absolute.

*Judgment affirmed. Beck, J., absent. The other Justices concur.*