## O'DOWD'S SONS & COMPANY *v.* CITY COUNCIL OF AUGUSTA *et al.*

1. There being a general law in this State providing a uniform method of exercising the right of condemning or taking private property for public purposes, and defining the quantum of interest acquired under proceedings for this purpose, which is less than a fee-simple title, an act passed subsequently to the adoption of this general law, conferring upon a municipality the authority to acquire by condemnation a fee-simple title to real property, is a special law enacted in a case for which provision has been made by an existing general law, and is repugnant to paragraph 1 of section 4 of article 1 of the constitution of the State, which inhibits such legislation.

2. If the special law referred to above could be construed so as to include two distinct powers for the purpose of condemnation,—one of the power to acquire by condemnation the fee-simple title to real property, and the other the power to condemn for the purposes stated and acquire the interest authorized to be acquired under the general law covering the subject of condemnation,—then the plaintiffs met this possibility by setting up in their petition that under such a construction the act would contain matter not covered or expressed by the title, and thus would be invalid because repugnant to another provision of the constitution (Civil Code, § 6437).

MAY 19, 1914. REHEARING DENIED JUNE 16, 1914.

Petition for injunction. Before Judge Hammond. Richmond superior court. September 6, 1913.

The City Council of Augusta instituted proceedings to acquire by condemnation a fee-simple title to certain real property in the City of Augusta, Georgia, belonging to M. O'Dowd's Sons & Company, and served notice upon the owners. Before the date fixed in the notice for the hearing, the owners filed their petition for an injunction, praying that the condemnors be restrained and enjoined from prosecuting the condemnation proceedings, on the ground that the proceedings were illegal, inasmuch as the act of July 27, 1909 (Acts 1909, p. 554), which was an act to authorize the City Council of Augusta to acquire by condemnation proceedings the fee-simple title to real property, was unconstitutional and void. At the interlocutory hearing the court denied the application for injunction, holding that the act referred to was not unconstitutional. The act of July 27, 1909, which is attacked in the petition for injunction, reads as follows: "An act to authorize the City Council of Augusta to acquire by condemnation or other proceedings fee-simple title to any real property in the City of Augusta, or the County of Richmond, which may be necessary for the laying of water-pipes, or for

enlarging, extending, or improving the water system of said city, or for the protection of said city or county from damage by floods and freshets, and for other purposes.

"Section 1. Be it enacted by the General Assembly of Georgia, and it is hereby enacted by authority of the same, that the City Council of Augusta be and it is hereby authorized to acquire by condemnation or other proceedings fee-simple title to any real property in the City of Augusta, or County of Richmond, which may be necessary for the laying of water-pipes, or for enlarging, extending, or improving the water system of said city, or for the protection of said city or county from damage by floods and freshets, and for other purposes.

"Sec. 2. Be it further enacted by the authority aforesaid, that said City Council of Augusta is hereby authorized and empowered to condemn any private property that may be necessary for the purpose of laying water-pipes, or for enlarging, extending, or improving the water system of said city, or for the protection of said city or county from damage by floods and freshets, and for other purposes, as provided in the first section of this act; *provided, however*, that said condemnation or taking of private property for the purposes aforesaid shall be done in accordance with the act of the General Assembly of Georgia, approved December 18th, 1894, entitled, 'An act to provide a uniform method of exercising the right of condemning and taking or damaging of private property,' and acts amendatory thereof."

*Hamilton Phinizy*, for plaintiff.

*C. Henry Cohen* and *William K. Miller*, for defendants.

BECK, J. (After stating the facts as above.)

The third section of the act under consideration is not material to a consideration of the questions involved in this case. The act is attacked on the ground that it violates paragraph 1 of section 4 of article 1 of the constitution of the State (Civil Code, § 6391), which provides that "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law." The general law which, according to the contentions of the petitioner, makes provision for condemnation of real property and the title or interest to be acquired therein, is to be found in an

act providing a uniform method of exercising the right of condemning private property, approved December 18, 1894 (Acts 1894, p. 95), which act is now embraced in the Code of 1910, §§ 5206-5246. This act of December 18, 1894, is a general law (*Alexander* v. *Augusta,* 134 *Ga.* 849, 68 S. E. 704), and covers the case of "all corporations" authorized to take private property for public purposes, where such corporations are seeking to acquire property by condemnation. The expression, "all corporations authorized to take private property for public purposes," includes, of course, municipal corporations. Not only does the act of 1894 provide the method of condemnation, but it also declares the quantum of interest with which the corporation condemning the property shall become vested. It was insisted in argument by counsel for defendant in error, that the act of 1894 was intended to be, as is shown by the title, an act to provide a uniform method of exercising the right of condemnation; that it was merely remedial in its scope; and that so much of the act embraced in section 27 thereof as defines the quantum of interest to be taken by the condemnor is beyond the scope of the act as indicated by the title, and contains matter different from what is expressed in the title. However sound this last-stated contention of defendant might be if the validity of the provision last referred to depended solely upon the legislative declaration as contained in the original act, it is deprived of all force and effect by the fact that this provision in the act of 1894, questioned on the ground that it contains matter different from what is expressed in the title, was embodied in the Code of 1895 in connection with the other provisions of the act of 1894, just as they are written in the original act. *Emory* v. *Grand United Order of Odd Fellows,* 140 *Ga.* 423 (78 S. E. 922). The legislature having already provided by a general law for the title or quantum of interest which should be taken by a corporation in private property condemned for public purposes, it was not competent for that body, in view of the constitutional inhibition against the passage of special laws in cases for which provision has been made by an existing general law, to confer upon one particular corporation the power to acquire, in the exercise of the right of eminent domain, a greater interest in property than that which is given to corporations generally under the general law last referred to. And the act of July 27, 1909, which by its terms confers upon the City Council of Augusta the right to

acquire a fee-simple title to real property taken by the city under condemnation proceedings, is in direct contravention of the constitutional provision inhibiting the enactment of special laws in cases for which provision is made by an existing general law.

The general law provides as follows, in regard to the quantum of interest which can be condemned: "Upon the payment, by the corporation or person seeking to condemn, of the amount of the award, and final judgment on appeal, such corporation or person shall become vested with such interest in the property taken as may be necessary to enable the corporation or person taking to exercise their franchise or conduct their business; and whenever the corporation or person shall cease using the property taken for the purpose of conducting their business, said property shall revert to the person from whom taken, his heirs or assigns." If this act of July 27, 1909, had conferred upon the City Council of Augusta authority to condemn any real estate "for enlarging, extending, or improving the water system of said city, or for the protection of said city or county from damage by floods and freshets, and for other purposes," a lawful condemnation of property would, under the general law above quoted, have vested in the city such interest in the property taken as might be necessary to enable it to exercise the franchise or conduct the business involved. The attack upon the act is not merely one of form, but involves substance. If in a particular instance the legislature could declare that one corporation may acquire by condemnation a fee-simple title to property, while under the general law all other corporations can acquire only such interest as is necessary, subject to reversion when the corporation shall cease to use the property for the purposes for which it may be taken, a discrimination is made in favor of one corporation against another. In no other city in the State can the corporate authorities condemn and take from a citizen for a public use a fee-simple title to his property. They can condemn and take such interest as may be necessary for the public use, and the right of property in the citizen is subject to the general public use to that extent. But if the public use should cease, why should the City of Augusta retain the fee-simple title to the property of the citizen while no other corporation could do so? While the argument proceeded as if this act dealt only with the public necessity for protection against damage by floods or freshets, in point of fact it goes far beyond

that, and declares that the City Council of Augusta may acquire by condemnation fee-simple title to real estate "which may be necessary for the laying of water-pipes, or for enlarging, extending or improving the water system of the city, or for the protection of said city or county from damage by floods and freshets, and for other purposes." Under this broad power the municipal authorities might condemn a strip of land directly through the lot of a property-owner for the purpose of laying a sewer or water-pipe, and if subsequently they should cease to use the land for that purpose, the city would nevertheless hold in fee-simple the strip of land dividing the property owner's lot into two parts, and they could sell this to a third person, thus conferring on him the ownership of the strip and leaving the original property owner with two isolated parts of his lot. This could not only be done as to water-pipes and sewers, but "for other purposes," if that broad language of the statute can have any application. No other municipality or other corporation in the State can make any such condemnation or work out any such results. If the legislature, in spite of the provisions in the constitution in regard to passing special laws in cases already covered by a general law, could select one municipality and declare it should have the power to condemn and acquire a fee-simple title while others could not do so, it would seem that they might also select a particular railroad company and declare that such company should have power to condemn and acquire the fee-simple title for the purpose of laying its track and for use as a right of way. If this should be done and a strip of land, perhaps 200 feet in width, should be condemned through the farm of a property-owner, although the railroad might subsequently be abandoned or the track be removed to another position, yet the railroad company would be left as the owner in fee simple of a broad strip of land dividing the farm of the original owner, and it could sell this strip of land to third parties, to the evidently great injury of the original owner whose property had been taken from him against his will, in which proceeding he was compelled to acquiesce on the ground that it was a matter of public use or public necessity. These simple illustrations will suffice to show that the legislature had substantial grounds for declaring that under the condemnation proceedings the condemnor should acquire such interest as was necessary for the exercise of the franchise or the conduct of the business; and that when the public use

which was the basis for the grant of the power should cease, the property should revert to the original owner from whom it was taken in invitum, or to his heirs or assigns. If by contract the owner should be willing to sell his property in fee simple, that would present a very different situation. Such being the case and also some of the reasons underlying the general law, the constitutional provision prohibiting special legislation in cases where a general law already applies is in the direction of the principles of equality and of granting like privileges to all and special privileges to none. This fundamental idea has been embodied in the provisions of the constitution. It is not merely an arbitrary declaration, but is based on profound principles of equality and justice, and the same instrument in express terms requires the courts to declare unconstitutional laws in violation of it. The preservation of the City of Augusta from damage by freshets and floods is doubtless a matter of great public utility and importance, and we by no means say anything in opposition to that fact. But safeguarding health, supplying water and light, and other similar things are matters of great importance in all municipalities, and yet it has not heretofore been thought necessary to provide for the acquisition by condemnation proceedings of a greater interest than might be necessary for the public purpose for which the condemnation was had.

This repugnancy to the constitution renders the act void. If we could clearly deduce from the act of July 27, 1909, the intention to confer upon the City Council of Augusta the right to take property under condemnation proceedings for the purposes mentioned in the act, without reference to the title or the amount of interest which should be acquired in such proceeding; that is, if it were clear from the reading of the entire act that the title which would be taken under such condemnation proceeding was not an essential part of the legislative scheme, then we would apply the well-established principle that when a statute can not be sustained as a whole, the courts will uphold it in part when it is reasonably certain that to do so will correspond with the main purpose which the legislature sought to accomplish by the enactment, if, after the objectionable part has been stricken, enough remains to accomplish that purpose. But it must be clear, before this rule is applied, that the purpose in the legislative mind at the time of the enactment of the law will be accomplished even though the part of the

statute held to be unconstitutional is stricken from it. For "if the objectionable part is so connected with the general scope of the statute that, should it be stricken out, effect can not be given to the legislative intent, the rest of the statute must fall with it. The courts can not construct from a defective statute a law which the lawmaking body did not intend to enact and which it can not be presumed it would have been willing to enact." *Deadwyler* v. *Karow*, 131 *Ga.* 236 (62 S. E. 172, 19 L. R. A. (N. S.) 197). In the act of July 27, 1909, the manifest purpose and intention of the legislature was to authorize the city to acquire, under condemnation proceedings, a fee-simple title to real property, and that purpose is an essential part, apparently, of the entire act and is interwoven with the provisions thereof. It is in the title of the act and is a prominent feature thereof. Had not this purpose to authorize the acquisition of a fee-simple title been an essential part of the legislative scheme, the legislative enactment might have been reduced to a mere declaration that the City Council of Augusta should have the right to take real property under condemnation proceedings for the purposes specified in the act. Courts must declare acts of the legislature void when they are repugnant to the constitution; but when parts of a legislative enactment are objectionable because repugnant to the constitution, if they may be segregated or eliminated from the enactment without affecting the general legislative scheme, the objectionable part may be declared void and the remainder of the act upheld as valid. But such is not the case here. Under the general law conferring upon corporations the right to take private property for public purposes under the exercise of the power of eminent domain, the interest taken in the property acquired does not amount to a fee-simple title. *Gardner* v. *Georgia Railroad Co.*, 117 *Ga.* 522 (43 S. E. 863). And the act involved here, providing that this particular municipality shall acquire a fee-simple title, is a special law for a case which is covered by the general law, and for that reason it is unconstitutional.

On behalf of the plaintiffs in error it was urged that the acquirement of a fee-simple title is so interwoven with the legislative intent that it can not be segregated and held unconstitutional and still leave a valid act authorizing the acquirement of such interest as might be necessary in accordance with the general law. This, it was contended, is manifest, both from the language in the body of

the act and from the fact that the legislature would hardly intend to create two distinct powers of condemnation in the same act, and also from the fact that the title of the act begins with the statement that it is "an act to authorize the City Council of Augusta to acquire by condemnation or other proceedings fee-simple title to any real property in the City of Augusta, or the County of Richmond," etc. Thus it appeared that the power conferred was not to condemn property for a certain use, with a superadded statement that a fee-simple title could be acquired, but, both in the title and in the body of the act, the provision goes directly to the power to acquire by condemnation a fee-simple title.

If, however, the act could be so construed as to include two distinct powers of condemnation for the purposes mentioned—one the power to acquire by condemnation the fee-simple title, and the other the power to condemn for the public purposes stated and acquire the interest authorized to be acquired by the general law,—then the plaintiffs met this possibility by setting up in their petition that under such construction the act would contain matter not covered by the title or indicated therein, and thus would be invalid under another section of the constitution (Civil Code, § 6437), inasmuch as the title was limited to the authorization of the municipal authorities to acquire by condemnation or other proceedings fee-simple title to real property for the purposes mentioned. Thus, if by construction the act should be made to escape the one constitutional provision, it would immediately be driven into destruction against the other.          *Judgment reversed. All the Justices concur.*