WALL, solicitor-general, *v.* MORRIS, clerk, *et al.*

1. The act approved August 8, 1918, fixing the salary of the solicitor-general of the Cordele circuit, and entitled "An act to abolish the fee system now existing in the superior courts of the Cordele circuit," etc., is not violative of article 6, section 13, paragraph 1 (Civil Code, § 6533), of the constitution of this State, fixing the salaries of the solicitor-general and certain other officers; nor is it violative of article 6, section 13, paragraph 2 (Civil Code, § 6534), providing how different salaries for the officers named may be prescribed; nor of article 7, section 6, paragraph 2 (Civil Code, § 6562), as to the taxing powers of counties.

2. The act referred to above is not unconstitutional as violating the provisions in the State and Federal constitutions against retroactive laws, laws impairing the obligations of contracts, and the due-process clause of the constitution.

3. Nor does it violate the inhibition in the constitution of this State against the passage of a special law in a case for which provision is made by an existing general law.

4. If the word "heretofore," occurring in the caption of the act of August 8, 1918, and in the first section of the act, should, if given effect, result in rendering the act in part retroactive in effect, that part of the act may be stricken therefrom without destroying or impairing the legislative scheme, which was clearly to fix a salary for the solicitor-general and abolish the fee system after the first of January, 1919; and the presence of that word in the places stated does not render the act unconstitutional.

No. 1514. DECEMBER 12, 1919.

Equitable petition. Before Judge Gower. Crisp superior court. June 2, 1919.

J. B. Wall, solicitor-general of the Cordele Circuit, brought his petition against the clerk of the superior court of Crisp county, the commissioners of that county, and certain banks, depositories for the county, which exercised and performed certain duties of the county treasurer, which latter office had been abolished. Petitioner sought, as a part of the relief prayed for, an injunction against the clerk of the superior court to restrain him from paying to the county depositories certain funds in his hands, arising

from the fines and forfeitures, and to enjoin the clerk from paying to the depositories any future sums that might come into his hands from fines and forfeitures. In his petition he attacks as unconstitutional, upon numerous grounds, the act approved August 8, 1918 (Acts 1918, p. 369), fixing the salary of the solicitor-general of the Cordele circuit, and abolishing the fee system existing in that judicial circuit at the date of the passage of the act. At the hearing of the case the court passed an order denying the prayers of the petition; the case having been submitted to the court without the intervention of a jury, upon the agreement that the allegations of fact in the petition were true. To this ruling the petitioner excepted.

*Crum & Jones* and *Rosser, Slaton, Phillips & Hopkins,* for plaintiff. *E. F. Strozier,* for defendants.

BECK, P. J. 1. The constitution of 1877, article 6, section 13, paragraph 1 (Civil Code, § 6533), provides as follows: "The judges of the Supreme Court shall have, out of the treasury of the State, salaries not to exceed three thousand dollars per annum; the judges of the superior courts shall have salaries not to exceed two thousand dollars per annum; the attorney-general shall have a salary not to exceed two thousand dollars per annum; and the solicitors-general each shall have salaries not to exceed two hundred and fifty dollars per annum; but the attorney-general shall not have any fee or perquisite in any cases arising after the adoption of this constitution; but the provisions of this section shall not affect the salaries of those now in office." Paragraph 2 (Civil Code, § 6534) provides as follows: "The General Assembly may at any time, by a two-thirds vote of each branch, prescribe other and different salaries for any, or all, of the above officers; but no such change shall affect the officers then in commission." The legislature of 1916 (Acts 1916, pp. 24, 26) passed an act to amend the constitution by adding at the end of paragraph 2, last above quoted, the following: "Provided, however, that the General Assembly shall have power, at any time, by a majority vote of each branch, to abolish the fees accruing to the office of solicitor-general, in any particular judicial circuit, and in lieu thereof to prescribe a salary for such office in addition to the salary prescribed in paragraph 1 of this section of this article, and without regard to the uniformity of such salaries in the various circuits, and shall

have the further power to determine what disposition shall be made of the fines, forfeitures, and fees accruing to the office of solicitor-general in any such judicial circuit where the fees are abolished." This amendment was subsequently ratified by a vote of the people on November 7, 1916, and the Governor issued his proclamation accordingly on December 15, 1916. One of the questions in this case is whether the act of 1918 (Acts 1918, p. 369), abolishing the fees pertaining to the office of the solicitor-general of the Cordele Circuit and providing a salary in lieu thereof, payable out of the county treasuries of that circuit, is violative of the foregoing provisions of the constitution. It is insisted that the salaries of the judges of the superior court and of the solicitors-general must come from the same source, to wit, the State treasury. In *Clark* v. *Hammond,* 134 Ga. 792, 795, 799 (68 S. E. 600), it was held: "Under a proper construction of art. 6, sec. 13, par. 1 and 2, of the constitution of 1877, salaries of the judges of the superior courts are payable exclusively from the State treasury. In so far as the act of 1904 (p. 73), as amended by the act of 1905 (p. 100) and the act of 1906 (p. 56), purports to supplement salaries of the judges of the superior courts from the county treasuries, it is void." In the course of the opinion, by Atkinson, J., it was said: "It thus appears from the history of the subject, as derived from the provisions of all the constitutions and acts of the legislature with reference thereto, that there was an uninterrupted practice upon the part of the lawmaking powers, up to the time of the adoption of the constitution of 1877, of making provision for payment of the salaries of the judges of the superior courts out of the treasury of the State. There was never any suggestion that the salaries might be paid from different sources, but the uniform practice was to provide for payment of each salary as a whole from one source—the treasury of the State." Again, it was said: "The reasoning which favors the constitutionality of local taxation for the payment of the salaries of judges of other courts might have had some bearing upon the question relative to the payment of the salaries of the judges of the superior courts, if the construction of art. 6, sec. 13, par. 1, were doubtful, and if at the time of the adoption of the constitution of 1877 such salaries were payable under any existing statute in part or wholly from the county treasuries; but the statutes relative to the

payment of the judges of the superior courts were not of that character. On the contrary, under them such salaries were payable exclusively from the State treasury." The decision in *Clark* v. *Hammond*, supra, merely holds that under a proper construction of the constitution, the salaries of the judges of the superior courts are payable exclusively from the treasury of the State; that neither the provision of article 7, section 6, paragraph 2, of the constitution (Civil Code, § 6562), enumerating and restricting the purposes for which a tax may be levied and collected by the various counties of the State, nor the provision of article 6, section 13, paragraph 2, of the constitution of 1877, which authorizes the General Assembly to "prescribe other and different salaries for any or all" of the officers designated in paragraph 1 of article 6, section 13 of the constitution, purport to deal with the sources from which the salaries of judges of the superior court might be paid. With respect to the salaries of the judges of the superior courts, the provisions of all constitutions, and of the acts of the General Assembly with reference thereto, establish beyond doubt that these salaries were payable wholly from the treasury of the State, and from no other source whatever. It is true that under the constitution of 1877, prior to the amendment of 1916, and under all prior constitutions, the salaries of the judges of the superior courts and solicitors-general were to be drawn from the same source, that is, the State treasury; but it is not true that the salaries of solicitors-general, under the constitution of 1877, constituted the exclusive compensation of these officers. On the other hand, the constitution of 1877 itself impliedly recognized and continued the long-established practice in this State of allowing the solicitors-general to derive their chief compensation from fines, forfeitures and fees. With respect to the attorney-general the constitution provided that he should have a salary not to exceed "two thousand dollars per annum, . . . but the attorney-general shall not have any fee or perquisite in any case arising after the adoption of this constitution." At the time of the adoption of the constitution of 1877, and at all times prior thereto, the salaries paid the solicitors-general out of the treasury of the State were merely nominal. The chief source of compensation provided for these officers was the fines, forfeitures, and fees allowed by law. The essential fact upon which the decision in *Clark* v. *Hammond*

was predicated was, that, with respect to the salaries of the judges of the superior courts, they were confined and limited to the amount paid to them from the treasury of the State. With respect to solicitors-general, the salary paid by the State constitutes a part, and a small part only, of their compensation, as already noted. Compensation of these officers was in 1877 and since drawn from two separate and distinct sources. In the light of these facts, let us examine the amendment of 1916. Prior to that amendment, as we have seen, the General Assembly was given the power, at any time, by a two-thirds vote of each house, to prescribe "other and different salaries" for any of the officers designated in paragraph 1 of article 6, section 13 of the constitution. The amendment of 1916 permitted the General Assembly, by a majority vote of each house, (1) to abolish the fees accruing to the office of solicitor-general in any particular judicial circuit; (2) to prescribe a salary in lieu thereof; (3) to fix the amount of the salary; (4) to fix the salary without regard to uniformity; and (5) to make disposition of the fines, forfeitures, and fees accruing to the office of solicitor-general in any circuit where the fees were abolished. The amendment does not in express terms designate the source from which the salary must be paid. The salary, which the amendment authorizes the General Assembly to prescribe in lieu of fees, is not a mere "increase" of the salary already provided from the treasury of the State; it is, in express words, "in addition thereto;" it is a new and different salary. A two-thirds vote of each branch of the General Assembly is required, under the constitution of 1877, to provide "another or different" salary for solicitors-general; and the salary thus provided must be uniform. A majority of each house of the General Assembly may abolish the fees pertaining to the office of the solicitor-general in any judicial circuit, and may prescribe in lieu thereof a salary in addition to the salary of $250, which is payable out of the treasury of the State. If the salary which the General Assembly is thus authorized to prescribe in lieu of the fees taken away from the solicitor-general in any particular judicial circuit is therefore a different and separate salary from the one fixed in the constitution of 1877, and payable out of the treasury of the State, why is it not competent for the legislature to provide for the payment of this separate and different salary from any

source from which it may be legally paid? Even more, if the constitution does not clearly imply that a different source is to be found by the General Assembly from which to pay this new and additional salary in lieu of fees theretofore allowed the solicitor-general, why is not the principle of uniformity carried forward in the constitutional scheme? Is it to be assumed that the constitution authorizes the payment of two salaries, wholly separate and distinct, to the same officer, for the same service, and out of the same treasury? When it is recalled that the amendment gives the General Assembly the power to make disposition of the fines, forfeitures, and fees accruing to the office of solicitor-general in any particular judicial circuit where a salary has been provided in lieu of such fees, it would seem to follow as a necessary implication that the true intent and purpose of the amendment was to empower the legislature to fix the source from which the salary should be paid.

We have next to consider whether the act of 1918, abolishing the fees pertaining to the office of the solicitor-general of the Cordele Circuit and prescribing a salary in lieu thereof, payable out of the treasuries of the counties of the circuit, violates the provision of the constitution as to the taxing powers of counties (Civil Code, § 6562), which is as follows: "The General Assembly shall not have power to delegate to any county the right to levy a tax for any purpose, except for educational purposes in instructing children in the elementary branches of an English education only; to build and repair the public buildings and bridges; to maintain and support prisoners; to pay jurors and coroners, and for litigation, quarantine, roads, and expenses of courts; to support paupers and pay debts heretofore existing; to pay the county police, and to provide for necessary sanitation." It must not be left out of view that counties are not wholly dependent upon taxation for revenue. See Civil Code, § 529. The very act under attack diverts to the county treasuries of the judicial circuits the fees and emoluments accruing to the office of the solicitor-general of the circuit; and it is a fair presumption that these fees will be sufficient, or more than sufficient, to pay the salary of the solicitor-general prescribed in lieu of the fees abolished in his circuit. The presumption is not without a basis of fact. In 1912 the General Assembly passed an act requiring all State-house officers, officers

and appointees of any department of State; and county officers who received fees and compensation other than salaries, to keep a daily account of such fees and compensation and to make sworn itemized statements quarterly to the comptroller-general of the State; and further requiring the comptroller-general to preserve and tabulate said quarterly statements for the information of the General Assembly at the next session thereof. This act was approved August 17, 1912. Acts 1912, p. 109. This act expressly enumerated solicitors-general, solicitors of city and county courts, and judges of city and county courts. It is fair to assume that this act was in answer to the demand of the people. It was generally believed that certain officers of the State and counties were receiving fees in excess of reasonable compensation for services rendered, and the fee system itself was under disfavor. Aside from these considerations, the salary of the solicitor-general, prescribed in lieu of the fees abolished in any particular judicial circuit, is a part of the "expenses of courts," within the meaning of article 7, section 6, paragraph 2, of the constitution.

The overplus of the fines and forfeitures, prior to the constitution of 1877, was payable to the county treasuries for specified purposes, it is true. See sections 846, 1112, 1113, 1114, 1116, 1117, 1118, 1119, and 1121 of Penal Code of 1910. Prior to the constitution of 1877 the General Assembly had provided for the payment of certain insolvent criminal costs in the Augusta judicial circuit out of the county treasuries. Acts 1873, p. 225. The act of 1918, under attack, makes it the duty of the ordinaries, county commissioners, or other county authorities having control of county matters in the judicial circuit in question, "to make provisions annually, when levying taxes for the expenses of courts, for the levying and collecting of sufficient taxes in their respective counties for the purpose of paying the portion of said salary chargeable against their respective counties." In the case of *Adair v. Ellis*, 83 *Ga.* 464 (10 S. E. 117), Simmons, J., apparently overlooking the act of 1873, supra, said: "As far as we know or can ascertain, the fees and costs of solicitors-general have never been regarded as expenses of court, to be paid from the county treasury." But it was not held that the fees and costs of solicitors-general might not, by legislative enactment, be declared to be expenses of court. To quote the language of Mr. Justice Simmons: "It may be argued,

however, that the legislature has the power to determine and define, under this paragraph, what are expenses of courts, and that the courts would be bound by its definition. . ': It is unnecessary for us to determine in this case whether the legislature can enlarge the common and usual meaning of these words or not." An examination of the case will show that on August 3, 1889, the legislature passed an act entitled "An act to authorize the compromise and adjustment of claims due to Howell C. Glenn and W. D. Ellis for insolvent costs due them as solicitors of the city court of Atlanta, and to provide for the payment thereof." Acts 1889, p. 1153. The case really turned upon another and different question; and this is expressly indicated in the opinion in *Adam* v. *Wright,* 84 *Ga.* 720, 724 (11 S. E. 893), where it was said: "The case of *Adair et al.* v. *Ellis et al.,* . . . is entirely different from the case under consideration. There the legislature sought by a special act, after the expiration of the offices of Ellis and Glenn as solicitors of the city court of Atlanta, to authorize and require the commissioners of Fulton county to levy and collect a tax to pay them for services which had long before been rendered by them as such solicitors, and when rendered, there was a general law applicable to solicitors of the city court of Atlanta, which pointed out the mode and manner in which they should be paid for their services." It is true that Justice Simmons, who wrote the opinion of the court in the case of *Adair* v. *Ellis,* supra, was of the opinion that fees of solicitors-general were not within the terms "expenses of court" as used in the constitution, but his intimation that such fees might properly be included within these terms, when the General Assembly should so declare, is emphasized in his dissenting opinion in *Chatham County* v. *Gaudry,* 120 *Ga.* 121, 131 (47 S. E. 634): "Court expenses include only such items or charges as are necessary for conducting the court, and such other items as the legislature may determine are proper to be paid under the words 'court expenses' as used in the constitution." The decision in *Clark* v. *Hammond,* already noticed, is not a direct ruling upon the question here presented, for the reasons already pointed out. However, we quote again from the opinion in that case: "It is not necessary to decide all that the term 'expenses of court' might embrace; but in view of the other provisions of the constitution mentioned in this opinion, it does not

include the salaries of the judges of superior courts." That the insolvent costs of solicitors-general may be treated as expenses of court, when so declared by legislative enactment, is recognized in the case of *Adam* v. *Wright,* supra. This case was decided subsequently to the decision in *Adair* v. *Ellis,* supra, and ruled expressly that there was nothing in the constitutional provision of article 7, section 6, paragraph 2, which forbade the payment of insolvent costs of the solicitor-general of the Augusta circuit out of any funds in the county treasury, such costs being a part of the expenses of court in the Augusta circuit. To quote from the opinion in that case: "This special or local law applicable to the Augusta circuit . . did, in our judgment, make insolvent criminal costs in that circuit a part of the expenses of court, when the payment thereof was recommended in the manner prescribed in the act." Further: "We think the act in question is not inconsistent with the constitution of 1877." In *Adam* v. *Cohen,* 84 *Ga.* 725, 726 (11 S. E. 895), it was said: "We think, as we have stated in the case of *Adam, treasurer,* v. *Wright, solicitor-general,* . . that the legislature had a right to provide that the services of the solicitor should be paid in the manner specified in the act, and that his fees therefor are expenses of that court. There is no general law that this act seeks to vary in its uniform operation as applicable to this court. So we do not think that the act is obnoxious to the constitution; and the solicitor has the right to be paid the sum allowed him by the judge out of the county treasury." In the case of *Clark* v. *Eve,* 134 *Ga.* 788 (68 S. E. 598), it was held that the payment of the salary of the judge of the city court of Richmond county, under the act approved August 15, 1905 (Acts 1905, p. 100), was not violative of article 7, section 6, paragraph 2, of the constitution. In the case of *Clark* v. *Black,* 136 *Ga.* 812 (3), 815 (72 S. E. 251), it was held that the "fees of the solicitor of the city court of Richmond county are an expense of that court and lawfully payable from the funds raised to defray the expenses of that court." The third division of the opinion in that case is as follows: "It was within the power of the legislature to provide that the salary of the solicitor, in whole or in part, should be paid from the county treasury. His salary was an expense of court, to pay which a tax could be constitutionally levied" (citing *Clark* v. *Eve,* supra). See also *Clark* v. *Reynolds,* 136 *Ga.* 817 (7), 825 (72

S. E. 254). In *McWilliams* v. *Smith*, 142 *Ga.* 209 (5), 220 (82 S. E. 569), it was held that the act creating the municipal court of Atlanta (Acts 1913, p. 145), which provided for the payment of the salaries of the judges thereof out of the county treasury, did not contravene article 7, section 6, paragraph 2, of the constitution, which declares that the General Assembly shall not have power to delegate to any county the right to levy a tax, except for certain specified purposes, one of which is "expenses of courts." It will be seen, therefore, that the authorities are numerous to the effect that the salaries of judges of city and county courts, and the fees, insolvent costs, and salaries of solicitors of city and county courts, and the fees and insolvent costs of solicitors-general can be legally paid from county treasuries; and that the legislature may, and has, both prior to and subsequently to the adoption of the constitution of 1877, exercised the power to declare fees and salaries expenses of courts. When, therefore, the constitutional amendment of 1916 authorized the General Assembly, at any time, by a majority vote of each house, to abolish the fees pertaining to the office of solicitor-general in any particular judicial circuit, and to prescribe in lieu of the fees abolished a salary in addition to the salary of $250 fixed in another paragraph of the constitution, the constitution by clear implication and necessary construction authorized the General Assembly to provide the source of payment of this additional salary. The act of 1918, abolishing the fees in the Cordele Circuit and prescribing a salary in lieu thereof, in addition to the salary of $250 payable to the solicitor-general under article 6, section 13, paragraph 1, of the constitution, requires the county authorities, as we have seen, to make provision annually for the payment of this additional salary "when levying taxes for the expenses of courts."

2. What we have said above disposes of what we regard as the main questions in this controversy. We cannot agree with counsel for plaintiff in error that if the act of August 8, 1918, fixing the salary, is prospective in its operation, it violates any provision of the Federal or the State constitution, which constitutes the other grounds of attack upon the constitutionality of the act. We do not think that it has the effect of impairing the obligation of a contract, or that it deprives the complainant of his property without due process of law. While it is true that for his insolvent costs

the solicitor-general had the judgment provided in the law and in a certain sense a lien upon fines and forfeitures which were to be paid subsequently into court, this lien was imperfect and incohate in its character, and could not become an actual, perfect lien until the fines should be paid into the fine and forfeiture fund; and it was not of such nature as to give the holder a property right in the fines and forfeitures that should subsequently arise in cases not tried or disposed of. For relative to future costs it would have been competent for the legislature to change or to abolish such fines and such source of revenue to the solicitor-general under the constitution as it existed before the amendment in pursuance of which the act here attacked as unconstitutional was based. Therefore, treating the act as prospective in its effect, we are of the opinion that it does not violate the provisions of the State and Federal constitutions prohibiting the passage of retroactive laws, laws impairing the obligations of contracts, and the due-process clause of the Federal constitution.

3. The act does not violate the inhibition in the constitution of the State of Georgia against the passage of a special law in a case for which provision is made by an existing general law.

4. If the word "heretofore," occurring in the caption of the act of August 8, 1918, and in the first section of the act, if given effect, should result in rendering the act in part retroactive in its effect, that part of the act may be segregated and stricken therefrom without destroying or impairing the legislative scheme, which was clearly to fix a salary for the solicitor-general and abolish the fee system after the first of January, 1919; and the presence of that word in the places stated does not render the act unconstitutional.

The act is not unconstitutional for any of the reasons urged against it; and the judgment of the court below sustaining it is

*Affirmed. All the Justices concur, except Fish, C. J., absent, and*
HILL, J. (with whom concurs ATKINSON, J.), dissenting.

1. The controlling question in this case is whether the act of 1918 (Acts 1918, p. 369), providing a salary for the solicitor-general of the Cordele Circuit, is violative of art. 6, sec. 13, par. 1, 2, of the constitution of the State (Civil Code of 1910, §§ 6533, 6534), as amended, and of article 7, section 6, par. 2, of the con-

stitution. The constitution, in the paragraph first cited, provides: "The judges of the Supreme Court shall have,*out of the treasury of the State* [italics ours], salaries not to exceed three thousand dollars per annum; the judges of the superior courts shall have salaries not to exceed two thousand dollars per annum; the attorney-general shall have a salary not to exceed two thousand dollars per annum; and the solicitors-general each shall have salaries not to exceed two hundred and fifty dollars per annum; but the attorney-general shall not have any fee or perquisite in any cases arising after the adoption of this constitution; but the provisions of this section shall not affect the salaries of those now in office." The next paragraph provides: "The General Assembly may at any time, by a two-thirds vote of each branch, prescribe other and different salaries for any, or all, of the above officers, but no such change shall affect the officers then in commission." This last provision was amended in 1916 by adding thereto the following: "Provided, however, that the General Assembly shall have power, at any time, by a majority vote of each branch, to abolish the fees accruing to the office of solicitor-general, in any particular judicial circuit, and in lieu thereof to prescribe a salary for such office, in addition to the salary prescribed in paragraph 1 of this section of this article, and without regard to the uniformity of such salaries in the various circuits, and shall have the further power to determine what disposition shall be made of the fines, forfeitures, and fees accruing to the office of solicitor-general in any such judicial circuit where the fees are abolished." Acts 1916, p. 24. It will be observed that this amendment does not expressly authorize the payment of salaries of solicitors-general from any other source than as provided in the constitution of 1877, which is from the *State treasury*.

In *Clark* v. *Hammond,* 134 *Ga.* 792 (68 S. E. 600), it was held that the salaries of judges of the superior courts could not be augmented by local taxation. The case of *Clark* v. *Black,* 136 *Ga.* 812 (72 S. E. 251), did not have reference to a solicitor-general, who was a State officer, but to the solicitor of a city court, a local officer who had jurisdiction only over the county of Richmond, the existence of which court and its organization, and the payment of salaries of the judge and solicitor by local taxation, antedated the constitution of 1877. Under these circumstances

the salary of the solicitor of the city court was held to be an expense of that court and payable from the funds raised to defray the expenses of that court. All of the facts above mentioned serve to distinguish the case from the present one. The solicitor-general's salary can not be supplemented by a local tax, the fact being that when the constitution of 1877 was adopted salaries of solicitors-general were not paid by local taxation, but were paid from the treasury of the State, by express provision.

Article 7, sec. 6, par 2, of the constitution of the State is as follows: "The General Assembly shall not have power to delegate to any county the right to levy a tax for any purpose, except for educational purposes in instructing children in the elementary branches of an English education only; to build and repair the public buildings and bridges; to maintain and support prisoners; to pay jurors and coroners, and for litigation, quarantine, roads, and *expenses of courts* [italics ours]; to support paupers and pay debts heretofore existing," etc. It will be seen from the foregoing that the purposes for which the counties can levy a tax are restricted to certain objects which are enumerated. The salaries of solicitors-general are not one of those objects, unless they are included in the language "expenses of courts," as used in the paragraph of the constitution just quoted. It has been held by this court that salaries of judges of the superior courts are not included in the language "expenses of courts." *Clark* v. *Hammond,* supra. Mr. Justice Atkinson, in a very able opinion delivered in that case, said: "As it did not [contemplate the payment of the salary of the judges of the superior courts], and the other purposes to which the levy of the county tax had been restricted by the constitution did not authorize the levy of a county tax to pay salaries of judges of the superior courts, there was no constitutional provision for the payment of the salaries of the judges of the superior courts out of the county treasuries. Thus an additional light is afforded, tending to show, by the language of art. 6, sec. 13, par. 1, of the constitution of 1877, a design to limit the payment of salaries of judges of the superior courts to funds derived from the treasury of the State. The paragraph of the constitution of 1877 which succeeded and immediately followed art. 6, sec. 13, par. 1, declared: The General Assembly may at any time, by a two-thirds vote of each branch, prescribe other and different salaries

for any, or all, of the above officers; but no such change shall affect the officers then in commission.' While by this language the legislature was authorized to designate other and different salaries, there was no express declaration that they should be paid elsewhere than from the State treasury." The arguments now presented in favor of the validity of the act of 1918, supra, referring to the salary of the solicitor-general of the Cordele circuit, were then presented in favor of the law relating to the salary of the judge of the superior court of the Augusta circuit. It is argued that the salary of the solicitor-general should be treated, under the provision of the constitution last above mentioned, as a court expense; and to support this contention the case of *Adam v. Wright,* 84 *Ga.* 720 (11 S. E. 893), is relied on. That decision was based upon a special act of February 15, 1873 (Acts 1873, p. 225), which provided for payment of insolvent costs of solicitors-general as a part of the court costs. Being a special act, and not being expressly referred to or repealed by the constitution of 1877, it was nevertheless preserved by the constitution of 1877. See *Clark v. Reynolds,* 136 *Ga.* 818 (6), 824 (72 S. E. 254), where it was held: "The act of 1873 . . was not repealed by the constitution of 1877, but was preserved by the clause of that instrument which declared that 'local and private acts passed for the benefit of counties, cities, towns, corporations, and private persons, not inconsistent with the supreme law, nor with this constitution, and which have not expired nor been repealed, shall have the force of statute law, subject to judicial decision as to their validity when passed, and to any limitations imposed by their own terms." The ruling in *Adam v. Wright,* supra, is not authority for holding, in the case under consideration, that the fees of solicitors-general fall within the comprehension of *court expenses* as declared in the provision of the constitution last above mentioned, so as to authorize the payment of such fees out of the county treasury.

An examination of the history of the payment of salaries as such of the judges of the superior courts and of solicitors-general of the State will show that they have always been paid out of the treasury of the State, and never from the county treasuries by local taxation. The members of the constitutional conventions of 1868 and 1877 left nothing to implication. They provided that these salaries should be paid out of the "treasury of the State."

Surely they did not intend that these salaries should be paid partly out of the treasury of the State and partly out of the county treasuries. Superior-court judges and solicitors-general both are State officers, and have always been so recognized. They are elected by the qualified voters of the State at large, and have always, so far as we know, been classified as State officers, and never as county officers. They have been paid salaries out of the State treasury. No judge of the superior court or solicitor-general has ever been paid a salary out of the county treasury. If the legislature, in proposing the constitutional amendment of 1916, had intended that the salaries of the solicitors-general should be paid in part by local taxation, how easy it would have been to have submitted an amendment to the people for ratification, saying so in plain words, and leaving nothing to implication. But the amendment submitted for ratification in 1916 did not expressly authorize taxation by counties for the payment of judges' and solicitors' salaries, for the simple reason that the same instrument they were attempting to amend provided for their payment out of *the State treasury;* and their failure to expressly provide, in the amendment, for a different method by local taxation by counties was in effect a denial to the counties of the right to pay by local taxation. It is true the legislature subsequently, by the act of 1918, attempted to do so; and it is here they exceeded their constitutional authority. Had the legislature said, in the amendment of 1916, what they subsequently said in the act of 1918, no question could be raised as to the authority to levy by county taxation. *But they did not do so.*

The salary of the solicitor-general stands on the exact footing as the salary of the judge of the superior court; and the same reasoning that would prevent the levy of a local tax to supplement the salary of the judge of the superior court, paid by the State, would prevent the levy of a local tax to supplement the salary of the solicitor-general. The ruling therefore, in *Clark* v. *Hammond,* supra, is controlling in this case upon the question of the constitutionality of the act of 1918, in so far as it attempts to supplement the salary of the solicitor-general of the Cordele Circuit by local taxation in the several counties of the circuit. This act undertook to deprive the solicitor-general of the fees which might be earned in the Cordele Circuit, and to require the sum

collected to be paid into the several county treasuries, and in lieu thereof to provide a salary for the solicitor-general, to be paid by the different counties of the circuit by local taxation. So much of the act as attempted to supplement this salary by local taxation was violative of the above-mentioned provisions of the State constitution. With this much of the act of 1918 eliminated, it could not be said that the legislature intended that the remainder of the act should be carried into effect; because it could not be assumed from the language of the whole act that it was intended to deprive the solicitor-general of all compensation except the $250 per year, which is fixed by the constitution and which is to be paid out of the treasury of the State. Under the circumstances the entire act must fall. *Deadwyler* v. *Karow,* 131 *Ga.* 236 (62 S. E. 172, 19 L. R. A. (N. S.) 197); *Futrell* v. *George,* 135 *Ga.* 265 (69 S. E. 182); *O'Dowd* v. *Augusta,* 141 *Ga.* 753 (82 S. E. 148). This would result in leaving the fees to be collected and applied by the solicitor-general under the old law, as if the act of 1918 had not been passed.

We conclude, therefore, that the act of 1918, supra, is repugnant to the clauses of the constitution quoted, which provide how the salaries of solicitors-general shall be paid; that is, from "the treasury of the State;" and consequently the court erred in granting the mandamus absolute.