## CLARK, treasurer, *v.* HAMMOND, judge.

Under a proper construction of art. 6, sec. 13, par. 1 and 2, of the constitution of 1877, salaries of the judges of the superior courts are payable exclusively from the State treasury. In so far as the act of 1904 (p. 73), as amended by the act of 1905 (p. 100) and the act of 1906 (p. 56), purports to supplement salaries of the judges of the superior courts from county treasuries it is void.

### July 14, 1910.

Mandamus. Before Judge Rawlings. Richmond superior court. February 22, 1910.

Henry C. Hammond, being judge of the superior courts of the Augusta circuit, instituted suit for a writ of mandamus against Walter A. Clark, as treasurer of Richmond county, to compel the payment of $166.66, alleged to be due for part of his salary as judge for the month of December, 1909. It was alleged that the petitioner was entitled to a salary of $5,000 per annum, $3,000 to be paid by the State and $2,000 by the county of Richmond, under certain acts of the legislature. The defendant filed a plea in bar and a demurrer, in which the acts of the legislature relied upon by the plaintiff as authorizing the payment of that part of the salary alleged to be due were attacked as being void, on the ground that they were violative of the constitution in several particulars fully set forth. The defendant also filed an answer, wherein certain of the allegations of the petition were admitted and others denied; and set up further that there was no legal duty upon the treasurer to pay the demand referred to in the petition, because under the several acts defining the duties of the treasurer he was required to pay only such demands as were audited and ordered paid by the board of county commissioners, and that the plaintiff's demand had not been approved by the county commissioners and ordered paid. The judge passed an order making the mandamus nisi absolute, and required the defendant to pay over the sum demanded. The defendant excepted.

*W. H. Fleming* and *Salem Dutcher,* for plaintiff in error.

*J. R. Lamar, Austin Branch, W. H. Barrett, Boykin Wright, C. H. & R. S. Cohen, King & Spalding, Adams & Adams,* and *Slaton & Phillips,* contra.

ATKINSON, J. 1. The law relied on as a basis for the writ of mandamus was the act approved August 6th, 1904 (Acts 1904,

p. 73), as amended by the act approved August 15th, 1905 (Acts 1905, p. 100), and later by the act approved July 31st, 1906 (Acts 1906, p. 56). As thus amended the act declared, among other things, the following: "That the judges of the superior courts of all the judicial circuits, which are now or may hereafter be established in this State, having therein a city with a population of not less than 34,000 inhabitants, according to the United States census of 1900, shall receive a salary of five thousand dollars per annum, the difference in amount between the sum paid said judges out of the treasury of the State and said five thousand dollars to be paid out of the treasury of the counties in which said cities are located, as other court expenses of said counties are paid; provided, that the provisions of this act shall not affect the salaries of such judges as are now in commission." One ground of attack upon the validity of this statute was that it was violative of art. 6, sec. 13, par. 1, of the constitution of the State of Georgia (Civil Code, § 5864), because under that provision of the constitution salaries of the judges of the superior courts were required to be paid out of the treasury of the State exclusively, and that the legislature was prohibited from making any part of the salary chargeable upon the county treasury. The provision of the constitution referred to is as follows: "The judges of the Supreme Court shall have, out of the treasury of the State, salaries not to exceed three thousand dollars per annum; the judges of the superior courts shall have salaries not to exceed two thousand dollars per annum; the attorney-general shall have a salary not to exceed two thousand dollars per annum; and the solicitors-general each shall have salaries not to exceed two hundred and fifty dollars per annum; but the attorney-general shall not have any fee or perquisite in any cases arising after the adoption of this constitution; but the provisions of this section shall not affect the salaries of those now in office." Under the view we take of the case, the decision is controlled by the construction to be placed upon this clause of the constitution. Art. 3, sec. 2, of the constitution of 1798 declared: "The judges shall have salaries, adequate to their services, established by law, which shall not be increased or diminished during their continuance in office; but shall not receive any other perquisites or emoluments whatever, from parties or others, on account of any duty required of them." Watkins'

Digest, p. 39. Thus it was declared at that early date that judges of the superior courts should have salaries, but nothing was said as to the source from which they should be paid. Subsequent enactments by the legislature provided the amount of the salaries, and designated that they were "payable quarterly out of any money in the treasury." Act 1804 (Clayton's Digest, 178) ; Act 1819 (Cobb's Digest, 1023). Later the act of 1857 (p. 129) increased the salaries of the judges of the superior courts, but did not specify expressly the source from which they should be paid. In 1865 the constitution again dealt with the matter, making provision with reference thereto substantially the same as that contained in the constitution of 1798, as appears in the foregoing excerpt. See constitution of 1865, art. 4, sec. 3, par. 1 (Irwin's Code, 1867, § 4975). The constitution being silent as to the source from which the salary should be paid, provision was made, in section 8 of the act approved March 13th, 1866 (Acts 1865-66, p. 9), for a standing appropriation to pay the salaries of all the officers of this State, whose salaries are fixed by law, out of the general taxes. This included, among others, the salaries of the judges of the superior courts. It thus appears that up to 1866 the salaries of the judges of the superior courts had never been paid elsewhere than out of the State treasury, though the constitution had not declared in express terms the source from which they should be paid. It was not until 1868 that the constitution declared, in so many words, that they were payable from the State treasury. By art. 5, sec. 10, par. 1, of the constitution of 1868 (Code of 1873, § 5113), it was declared: "The judges of the Supreme and superior courts and the attorney and solicitors-general shall have, out of the State treasury, adequate and honorable salaries on the specie basis, which shall not be increased or diminished during their continuance in office. The district judges and district attorneys shall receive, out of the treasuries of the several counties of their districts, adequate compensation, on the specie basis, which shall not be increased or diminished during their term of office; but said judges shall not receive any other perquisite, or emoluments whatever, from parties, or others, on account of any duty required of them." The introduction of district courts into the State's judicial system, with the salaries of the judges intended to be payable out of the county treasuries, furnished a sufficient reason for the makers of the con-

stitution to exercise greater particularity in specifying the source from which judicial salaries should be paid. As the different courts were intended to be paid from separate sources, the source from which each was intended to be paid was expressly and explicitly stated. After the district courts were abolished (Acts 1871-72, p. 68), the fact of their introduction in the manner above indicated no longer afforded a reason for the same particularity in designating the source from which the salaries of the judges of the other courts should be paid. No other law was made on the subject by any of the lawmaking powers until action was taken by the constitutional convention which assembled in 1877. At that time the provision was made which we are now undertaking to construe. In the debates before the convention no reference was made to the source from which the salaries of the judges of the superior courts should be paid. See Small's Notes of the Constitutional Convention of Georgia, pp. 246-7. It thus appears from the history of the subject, as derived from the provisions of all the constitutions and acts of the legislature with reference thereto, that there was an uninterrupted practice upon the part of the lawmaking powers, up to the time of the adoption of the constitution of 1877, of making provision for payment of the salaries of the judges of the superior courts out of the treasury of the State. There was never any suggestion that the salaries might be paid from different sources, but the uniform practice was to provide for payment of each salary as a whole from one source—the treasury of the State. When the constitution of 1877 came to deal with the subject, the district court no longer being a factor, the language was varied somewhat, as set forth in art. 6, sec. 13, par. 1, of that constitution, as quoted above. In that clause of the constitution of 1877 the words "out of the State treasury" were employed in immediate connection with the provision for salaries of the judges of the Supreme Court, but were not repeated in such connection with any of the other salaries mentioned. This change in the phraseology in the constitution of 1877 from that of previous constitutions was no doubt the result of the introduction into the constitution of 1865 of district courts, and the abolition of those courts by the act of 1872, supra. As stated before, the salaries of the judges of the district courts were intended to be paid out of the county treasuries, and consequently particular language was employed in the constitution of 1865, but

when those courts were abolished in 1872, and there was no longer a necessity for payment of salaries from county treasuries, the language of the constitution of 1877 on the subject was again changed, so that it more nearly resembled the language employed in previous constitutions. Except for the advent and passing from the judicial system of the State of the district courts, the language of the constitution of 1877, in regard to the payment of salaries of the judges of the superior courts, would probably have been as embraced in the constitution of 1798, and substantially repeated in the constitution of 1865, which merely provided that salaries should be paid, without designating the source of payment. The omission of the constitution of 1877 to repeat the words "out of the State treasury," in immediate connection with the salaries of each of the officers other than the judges of the Supreme Court, could hardly be said to signify any intent that those salaries might be paid from any other source than the State treasury. The language of the act of 1906, quoted above, which is attacked as being unconstitutional, recognizes that the salaries theretofore payable to judges of the superior courts were payable out of the State treasury, and refers to that fact in express language. The uniform practice, for so many years, of paying from the State treasury the salaries of judges of the superior courts under legislative enactments and constitutional sanction indicates a marked design upon the part of the framers of the constitution that the salaries should be paid from that source; otherwise it would have been expressly prohibited. Another indication of such a design is the provision in the constitution for the levy of an ad valorem tax upon all property in the State for the support of the State government and the public institutions, which included the superior courts. Art. 7, sec. 1, par. 1, of the constitution of 1877 (Civil Code, § 5882). Again, the constitution of 1877 made provision for the levy of an ad valorem tax by counties, but expressly restricted it to certain purposes. Art. 7, sec. 6, par. 2 (Civil Code, § 5892). The language of this provision of the constitution was: "The General Assembly shall not have power to delegate to any county the right to levy a tax for any purpose, except for educational purposes in instructing children in the elementary branches of an English education only; to build and repair the public buildings and bridges; to maintain and support prisoners; to pay jurors and coroners, and

for litigation, quarantine, roads, and expenses of courts; to support paupers and pay debts heretofore existing." It could not be contended that any of the purposes specified contemplated the payment of the salaries of the judges of the superior courts, unless it should be the provision for payment of "expenses of court." We shall see presently that this provision does not refer to salaries of judges of the superior courts. As it did not, and the other purposes to which the levy of the county tax had been restricted by the constitution did not authorize the levy of a county tax to pay salaries of judges of the superior courts, there was no constitutional provision for the payment of the salaries of the judges of the superior courts out of the county treasuries. Thus an additional light is afforded, tending to show, by the language of art. 6, sec. 13, par. 1, of the constitution of 1877, a design to limit the payment of salaries of judges of the superior courts to funds derived from the treasury of the State. The paragraph of the constitution of 1877 which succeeded and immediately followed art. 6, sec. 13, par. 1, declared: "The General Assembly may at any time, by a two-thirds vote of each branch, prescribe other and different salaries for any, or all, of the above officers, but no such change shall affect the officers then in commission." While by this language the legislature was authorized to designate other and different salaries, there was no express declaration that they should be paid elsewhere than from the State treasury. A salary for a different amount, either larger or smaller than one existing, would satisfy the words "other" and "different," whether it be paid from the State treasury or some other source. Giving the words their ordinary significance, if there was no change in amount, but only a change in the source from which it was to be paid, it would be more appropriate to say that the officer received the same salary, but obtained it from a different source. In order to give effect to the words "other and different," as employed, it is not necessary to say that the salary which the legislature was authorized to provide should be paid from a different source than that contemplated in the preceding paragraph of the constitution. It might be suggested that, on account of the inequality of labor imposed upon the different judges of the superior courts, the framers of the constitution would not have prescribed a uniform salary for them. Whatever bearing this argument might have upon the construction to be placed upon art. 6,

sec. 13, par. 1, of the constitution, its effect is greatly overcome by reference to an ordinance adopted by the constitutional convention, which declared: "There shall be sixteen judicial circuits in this State, and it shall be the duty of the General Assembly to organize and proportion the same in such manner as to equalize the business and labor of the judges in said several circuits, as far as may be practicable. But the General Assembly shall have power hereafter to reorganize, increase, or diminish the number of circuits; provided, however, that the circuits shall remain as now organized, until changed by law." Civil Code, § 5946. This ordinance shows a design upon the part of the members of the convention that there should be equalization, as nearly as possible, of labor imposed upon the judges, with uniformity of salary, rather than unequal labor and unequal salary.

It was urged that the salaries of the judges of the superior courts might be supplemented from the county treasuries on the ground that the salaries of the judges are "expenses of court," and as such are authorized to be paid under the provisions of art. 7, sec. 6, par. 2, of the constitution of 1877. That provision of the constitution does not purport to deal with the source from which salaries of judges might be paid, but only declares for what purposes county taxes might be levied, and includes among them "expenses of court." There are other expenses attending the holding of courts in the several counties; and this power of counties to tax for "expenses of court" would not fail for want of a subject-matter upon which to operate, if the provisions should not be held applicable to salaries of judges of the superior courts. The cases of *Anderson* v. *Ryan,* 82 *Ga.* 559 (9 S. E. 331), involving the payment of the salary of the judge of a county court out of a county treasury, and *Adam* v. *Wright,* 84 *Ga.* 720 (11 S. E. 893), involving the payment of the insolvent fees of the solicitor-general out of the county treasury, and *Adam* v. *Cohen,* 84 *Ga.* 725 (11 S. E. 895), involving the payment of the fees of a solicitor of a county court out of a county treasury, and *Chatham County* v. *Gaudry,* 120 *Ga.* 121 (47 S. E. 634), involving the payment of a certain amount out of the county treasury to a committee of citizens appointed by the grand jury to inspect the records of county officers, have been cited as supporting the contention that the salaries of judges of the superior courts might be paid out of the county treas-

ury as "expenses of court." No constitutional question was raised or decided in *Anderson* v. *Ryan*. The constitutional questions made in the other cases were different from that under discussion in the case at bar. The salaries of judges of the superior courts were not involved in either, and in none of them were construed or applied art. 6, sec. 13, par. 1 and 2, of the constitution of 1877. It is not necessary to decide all that the term "expenses of court" might embrace; but in view of the other provisions of the constitution mentioned in this opinion, it does not include the salaries of the judges of the superior courts. What has been said relates' exclusively to the salaries of the judges of the superior courts, and is not intended to apply to the salaries of judges of county courts, city courts, or other courts which existed at the time of the adoption of the constitution, or which may have been subsequently created by law, as authorized in art. 6, sec. 1, par. 1, of the constitution of 1877 (Civil Code, § 5831). That provision of the constitution declared: "The judicial powers of this State shall be vested in a Supreme Court, superior courts, courts of ordinary, justices of the peace, commissioned notaries public, and such other courts as have been or may be established by law." At the time of its adoption the city courts of Atlanta and Savannah were in existence, and the salaries of the judges were payable from sources other than the State treasury. The same may be said of the county courts. The provision for other courts in this article of the constitution, at a time when such courts as city courts and county courts actually existed, and the salaries of the judges thereof were being paid from local sources, was a distinct recognition that as to such courts the salaries of the judges were not intended to be paid by the State. Under the act of 1875 (Acts 1875, p. 40), the salary of the judge of the city court of Atlanta was payable from the treasury of Fulton county. The salary of the judge of the city court of Savannah, under the act of 1819 (Acts 1819, p. 617), and the act of 1853 (Acts 1853-54, p. 281), was payable out of the city treasury. The salaries of the judges of the county courts, under the act approved January 19th, 1872 (Acts 1871-72, p. 288), were payable by local taxation in the several counties. The reasoning which favors the constitutionality of local taxation for the payment of the salaries of judges of other courts might have had some bearing upon the question relative to the payment of the salaries of the

judges of the superior courts, if the construction of art. 6, sec. 13, par. 1, were doubtful, and if at the time of the adoption of the constitution of 1877 such salaries were payable under any existing statute in part or wholly from the county treasuries; but the statutes relative to the payment of the judges of the superior courts were not of that character. On the contrary, under them such salaries were payable exclusively from the State treasury.

Under a proper construction of the constitution the salaries of the judges of the superior courts are payable exclusively from the treasury of the State; and so much of the act of 1904, as amended by the subsequent acts of 1905 and 1906, hereinbefore mentioned, as purports to authorize such salaries to be supplemented by funds from county treasuries is void. Owing to the difference in the constitutions and statutes involved, rulings from courts of other States are not very helpful; but see, on the general subject: County of Shelby v. Six Judges, 3 Tenn. Cases (Shannon), 508; Colbert v. Bond, and Glisson v. Calloway, 110 Tenn. 370 (75 S. W. 1061); also cases cited in 23 Cyc. 528 (7), and in American Digest (Cent. ed.), § 76, p. 1649, § 78, p. 1652.

*Judgment reversed. All the Justices concur.*