MacNEILL, treasurer *v.* HOWARD.

No. 11840. DECEMBER 4, 1937. REHEARING DENIED DECEMBER 16, 1937.

*Charles B. Shelton, Ralph H. Pharr, E. H. Sheats,* and *W. S. Northcutt,* for plaintiff in error.

*Marion Smith* and *James A. Branch,* contra.

ATKINSON, Presiding Justice. The board of commissioners of Fulton County adopted a resolution, that, "beginning with January 1, 1926, the judges of the superior court of Fulton County be paid by Fulton County seven thousand dollars ($7000) per year instead of five thousand ($5000) as heretofore paid." On January 9, 1931, the board adopted another resolution, "that the salary as paid by Fulton County for all judges of the superior court be fixed at five hundred eighty-three dollars and eighty-three cents

($583.83) per month for and during the year of 1931, and that such salaries be considered as fixed for the term of office of each judge." G. H. Howard was one of the judges of said court, for the term commencing January 1, 1929, and expiring December 31, 1932. On September 4, 1931, the board adopted another resolution whereby the amounts to be paid the judges were ordered reduced two thousand dollars per annum, effective beginning October, 1931. On July 22, 1932, the board adopted a resolution further reducing the amounts to be paid. Warrants were duly issued to Judge Howard for reduced amounts, in pursuance of the two last-mentioned resolutions, which he accepted. The result of this was that in the year 1931 Judge Howard received $6500 instead of $7000, and in the year 1932 he received $4333.33 instead of $7000, thus receiving during both years $3166.63 less than he would have received if he had been paid $7000 for each of those years. In 1936 his demand for this balance was refused. On November 24, 1936, he brought mandamus proceedings against the county treasurer, to compel payment of the amount. The defendant did not file a demurrer to the petition, but filed an answer which was twice amended. There were other pleadings, but in the view the court takes of the case it will not be necessary to state them. On the petition and admissions in the answer the judge granted mandamus absolute, and the defendant excepted.

In article 6, section 13, paragraph 1, of the constitution of 1877 (Code of 1910, § 6533) it was provided that "the judges of the superior courts shall have salaries not to exceed two thousand dollars per annum, . . but the provisions of this section shall not affect the salaries of those now in office." In paragraph 2 it was provided: "The General Assembly may at any time, by a two-thirds vote of each branch, prescribe other and different salaries for any, or all, of the above officers, but no such change shall affect the officers then in commission." In *Clark* v. *Hammond,* 134 *Ga.* 792 (68 S. E. 600), it was held: "Under a proper construction of art. 6, sec. 13, par. 1 and 2, of the constitution of 1877, salaries of the judges of the superior courts are payable exclusively from the State treasury. In so far as the act of 1904 (p. 73), as amended by the act of 1905 (p. 100) and the act of 1906 (p. 56), purports to supplement salaries of the judges of the superior courts from county treasuries, it is void." Following that

decision the constitution was amended as proposed by the acts of 1910, 1918, and 1920 (Ga. L. 1910, p. 42; 1918, p. 94; 1920, p. 20), so as to authorize specified counties to supplement salaries of the judges of the superior courts. So far as material to be stated in this case, the amendment of 1920 provides, in part: "Be it enacted by the General Assembly of the State of Georgia, and it is hereby enacted by authority of the same, that paragraph 1 of section 13 of article 6 of the constitution of the State of Georgia, relating to salaries of the . . judges of the superior courts, be and the same is hereby amended so as to provide that . . the judges of the superior court each shall have out of the treasury of the State salaries of $5000 per annum; provided . . that the board of county commissioners of Fulton County, or such other board of persons as may from time to time exercise the administrative powers of Fulton County, shall have power and authority to pay the judges of the superior court of Fulton County such sums, in addition to the salaries paid by the State, as said administrative authority or authorities may deem advisable, and the amounts so paid are declared to be a part of the court expenses of said county . . ; and such payments shall be made to the judges now in office, as well as to their successors. . . The provisions of this amendment . . shall begin from the ratification of this amendment, as provided in the second section hereof, and shall apply to the incumbents in the several offices, as well as their successors." Paragraph 2 of section 13 of article 6 of the constitution remains as quoted above, in so far as relates to judges of the superior courts. It was as proposed by the act of 1916 (Ga. L. 1916, p. 22). That amendment related to other matters, as to which see *Wall* v. *Morris,* 149 *Ga.* 632 (101 S. E. 683).

The above amendment to paragraph 1 of section 13 of article 6 of the constitution is now a part of the constitution, as much so as are the other provisions of that paragraph that were adopted originally in 1877. The history of that provision up to the time of the adoption of the constitution was stated in the opinion in *Clark* v. *Hammond,* supra, which may be referred to as throwing some light on a proper construction of this provision of the constitution as amended. In that opinion it was said: "Art. 3, sec. 2, of the constitution of 1798 declared: ' The judges shall have salaries, adequate to their services, established by law, which shall

not be increased or diminished during their continuance in office; but shall not receive any other perquisites or emoluments whatever, from parties or others, on account of any duty required of them.' Watkins' Digest, p. 39. Thus it was declared at that early date that judges of the superior courts should have salaries, but nothing was said as to the source from which they should be paid. Subsequent enactments by the legislature provided the amount of the salaries, and designated that they were 'payable quarterly out of any money in the treasury.' Act 1804 (Clayton's Digest, 178); Act 1819 (Cobb's Digest, 1023). Later the act of 1857 (p. 129) increased the salaries of the judges of the superior courts, but did not specify expressly the source from which they should be paid. In 1865 the constitution again dealt with the matter, making provision with reference thereto substantially the same as that contained in the constitution of 1798, as appears in the foregoing excerpt. See constitution of 1865, art. 4, sec. 3, par. 1 (Irwin's Code, 1867, § 4975). The constitution being silent as to the source from which the salary should be paid, provision was made, in section 8 of the act approved March 13th, 1866 (Acts 1865-66, p. 9), for a standing appropriation to pay the salaries of all the officers of this State, whose salaries are fixed by law, out of the general taxes. This included, among others, the salaries of the judges of the superior courts. It thus appears that up to 1866 the salaries of the judges of the superior courts had never been paid elsewhere than out of the State treasury, though the constitution had not declared in express terms the source from which they should be paid. It was not until 1868 that the constitution declared, in so many words, that they were payable from the State treasury. By art. 5, sec. 10, par. 1, of the constitution of 1868 (Code of 1873, § 5113), it was declared: 'The judges of the Supreme and superior courts and the attorney and solicitors-general shall have, out of the State treasury, adequate and honorable salaries on the specie basis, which shall not be increased or diminished during their continuance in office. The district judges and district attorneys shall receive, out of the treasuries of the several counties of their districts, adequate compensation, on the specie basis, which shall not be increased or diminished during their term of office; but said judges shall not receive any other perquisite, or emoluments whatever, from parties, or others, on account of any

duty required of them.' The introduction of district courts into the State's judicial system, with the salaries of the judges intended to be payable out of the county treasuries, furnished a sufficient reason for the makers of the constitution to exercise greater particularity in specifying the source from which judicial salaries should be paid. As the different courts were intended to be paid from separate sources, the source from which each was intended to be paid was expressly and explicitly stated. After the district courts were abolished (Acts 1871-72, p. 68), the fact of their introduction in the manner above indicated no longer afforded a reason for the same particularity in designating the source from which the salaries of the judges of the other courts should be paid. No other law was made on the subject by any of the lawmaking powers until action was taken by the constitutional convention which assembled in 1877."

The amendment to the constitution adopted in 1920, now under consideration, was made in the light of the decision in *Clark* v. *Hammond,* supra, holding the acts of the legislature therein referred to unconstitutional, and was made to meet the grounds of unconstitutionality that were sustained in that case. It provided: "That the board of county commissioners of Fulton County, or such other board of persons as may from time to time exercise the administrative powers of Fulton County, shall have power and authority to pay the judges of the superior court of Fulton County such sums, in addition to the salaries paid by the State, as said administrative authority or authorities may deem advisable, and the amounts so paid are declared to be a part of the court expenses of said county." That power, according to the decision of this court, did not exist under the constitution before the amendment. The same amendment of 1920 (Ga. L. 1920, p. 20) provided for supplementing salaries payable from the treasury of the State to judges of the superior courts by several other counties, including the counties of Bibb and Floyd; but the provision as to Fulton County was different from those in the other named counties. The provision as to Fulton County was as quoted above, while as to both the other named counties the provision was that the county administrative authorities "may supplement from their respective county's treasuries the salaries of the judges of the circuits of which they are a part, by such sum as may be necessary, with

salaries paid each of said judges from the State treasury, to make a salary of $6,000 each per annum of such judges," which shows that as to them there was express authority to the administrative officers of the counties to pay from the county treasury annual salaries for definite amounts to the judges. The authority in relation to Fulton County was only "to pay the judges . . such sums, in addition to the salaries paid by the State, as said administrative authority or authorities may deem advisable." It named no amount or period of payment, and did not declare it to be salary. Construed in the light of the history of salaries for judges as hereinbefore set forth, and the circumstance that it was adopted to meet such constitutional objections as were dealt with in *Clark* v. *Hammond,* supra, and in the light of the construction placed upon it by the administrative officers, the amendment authorized payment of amounts as compensation in the nature of salary (*Tucker* v. *Shoemaker,* 149 *Ga.* 250, 99 S. E. 865), but not technical "salary" within the meaning of paragraph 2 of section 13 of article 6 of the constitution.

The intent of the framers of this amendment to the constitution, that the compensation authorized should not be salary in a technical sense, is illustrated by the fact that no amount was specified, and no period of service mentioned; but these, and the allowance of such compensation, should be governed by conditions only as the administrative authorities of the county might "deem advisable." On account of this distinguishing difference from the provisions of the amendment relating to the Counties of Bibb and Floyd, the decisions in *Freeney* v. *Brown,* 182 *Ga.* 818 (187 S. E. 40), relating to salaries of the judges in Bibb County, and *Best* v. *Maddox,* 185 *Ga.* 1 (194 S. E. 578), relating to salaries of judges in Floyd County, the principles applied in those cases do not require the same result in this case as was reached in those cases, namely that after formally supplementing salaries provided by the State for the judges by additional salaries out of the county treasuries in question, the administrative county authorities, on account of the restrictions in paragraph 2 of section 13 of article 6 of the constitution, could not in the first case reduce the salary during the judge's term, and in the second case could not reduce the salary during or after his term. But as the compensation from county funds in the instant case was not salary within the mean-

ing of paragraph 2 (supra), the provisions thereof which are quoted above do not apply; and consequently the administrative officers of the County of Fulton (not restricted by the provisions of that part of the constitution) could, as they might deem advisable, reduce the salaries of the judges of the superior court of that county during their respective terms, which is the exact question now for decision. In this view the court erred in granting mandamus absolute. Similar views were expressed by Mr. Justice Hutcheson in *Moseley* v. *Garrett,* 182 *Ga.* 810 (187 S. E. 20), with reference to salary of the solicitor-general under the act of 1931 (Ga. L. 1931, p. 629), fixing the salary to be paid the solicitor-general of the Macon Circuit by Peach County, in which decision it was held that paragraph 2 of section 13 of article 6 of the constitution did not apply, and that the administrative officers of the county during the term of the solicitor-general could reduce the amount previously allowed.

Applying the foregoing ruling, the court erred in granting mandamus absolute. And as this must result in final disposition of the case favorably to the plaintiff in error, no ruling will be made on other assignments of error.

*Judgment reversed. All the Justices concur, except Russell, C. J., and Jenkins, J., who dissent.*