THOMAS, executrix, *v.* MacNEILL, treasurer; *et vice versa.*

Nos. 15326, 15335. JANUARY 15, 1946. REHEARING DENIED FEBRUARY 21, 1946.

*James A. Branch* and *Thomas B. Branch Jr.,* for plaintiff.
*Harold Sheats* and *W. S. Northcutt,* for defendant.

CANDLER, Justice. (After stating the foregoing facts.) Provision for the payment of salaries of judges of the superior courts was made in the State Constitution of 1877 under article 6, section 13, paragraph 1, which originally read as follows: "The Judges of the Supreme Court shall have, out of the treasury of the State, salaries not to exceed three thousand dollars per annum; the Judges of the Superior Courts shall have salaries not to exceed two thousand dollars per annum; the Attorney-General shall have a salary not to exceed two thousand dollars per annum; and the Solicitors-General shall each have salaries not to exceed two hundred and fifty dollars per annum; but the Attorney-General shall not have any fee or perquisite in any cases arising after the adoption of this constitution; but the provisions of this section shall not affect the salaries of those now in office." The salaries of judges of the superior courts in certain judicial circuits were sought to be increased to $5000 per annum, by statutes, particularly by an act approved August 6, 1904 (Ga. L. 1904, p. 73), as amended by an act approved August 15, 1905 (Ga. L. 1905, p. 100), and later by an act approved July 31, 1906 (Ga. L. 1906, p. 56). Said act as amended, among other things, declared: "That the judges of the superior courts of all the judicial circuits, which are now or may hereafter be established in this State, having therein a city with a population of not less than 34,000 inhabitants, according to the United States census of 1900, shall receive a salary of five thousand dollars per annum, the difference in amount between the sum paid said judges out of the treasury of the State and said five thousand dollars to be paid out of the treasury of the counties in which said cities are located, as other court expenses of said counties are paid; provided, that the provisions of this act shall not affect the salaries of such judges as are now in commission." Relying upon the purported increase of salary provided in said act as amended, the judge of the superior courts of the Augusta Circuit instituted a suit for the writ of mandamus against the Treasurer of Richmond County to compel the payment of the portion of the salary alleged to be due by the county. The county treasurer attacked the statute as amended on the ground that it was in violation of article 6, section 13,

paragraph 1 of the Constitution of Georgia, because under that provision of the constitution salaries of the judges of the superior courts were required to be paid out of the treasury of the State exclusively, and the legislature was prohibited from making any part of the salary chargeable upon the county treasury. After the grant of a mandamus absolute, the county treasurer excepted, and the case was decided by the Supreme Court of Georgia on July 14, 1910 (*Clark* v. *Hammond,* 134 *Ga.* 792, 800, 68 S. E. 600), where, after an elaborate discussion of the history of the payment of salaries of judges of the superior courts, the court held: "Under a proper construction of the constitution, the salaries of the judges of the superior courts are payable exclusively from the treasury of the State; and so much of the act of 1904, as amended by the subsequent acts of 1905 and 1906, hereinbefore mentioned, as purports to authorize said salaries to be supplemented by funds from county treasuries is void."

After the decision in *Clark* v. *Hammond,* supra, an amendment to the aforementioned paragraph of the constitution was ratified on October 5, 1910 (Ga. L. 1910, p. 42) by adding to the original language thereof a proviso as follows: "Provided, however, That the Counties of Chatham, Fulton, and Richmond shall pay from their respective county treasuries to the superior court judges of the circuit of which they are a part, and the County of Fulton to the Judge of the Stone Mountain Circuit, or the judge of such other circuit as may hereafter be required to regularly preside therein, for additional services rendered in the Superior Court of Fulton County, such sums as will, with the salaries paid each judge from the State Treasury, make a salary of $5000 per annum to each judge; and said payments are declared to be a part of the court expenses of such counties, such payments to be made to the judges now in office as well as their successors.

"The act of the General Assembly of 1904, entitled 'An Act to Regulate the Salaries of Judges of the Superior Courts of all judicial circuits of this State having, or that may hereafter have, therein a city with a population of not less than 54,000, nor more than 75,000 inhabitants, and for other purposes,' with the acts of the General Assembly of 1905 and 1906 amendatory thereof; and also the act of the General Assembly of 1906, entitled 'An Act to Regulate the Compensation of Judges of the Superior Courts for

services rendered outside of their own circuits in those judicial circuits of the State having therein a city of not less than 75,000 inhabitants according to the census of 1900, and for other purposes,' which acts provide for the payment from the treasuries of the counties containing said cities to the judges aforesaid of a part of their salaries, are ratified, validated, and confirmed as to the dates of said respective enactments."

Article 6, section 13, paragraph 1, of the Constitution of Georgia of 1877 was further amended by an amendment ratified November 3, 1914 (Ga. L. 1913, p. 30), which made that portion of the proviso authorizing additional salaries to judges of superior courts to be paid by certain counties applicable also to Bibb County; and, by an amendment ratified November 7, 1916 (Ga. L. 1916, p. 22), Clarke, Floyd, Sumter, and Muscogee were inserted among the other named counties authorized to pay such additional salaries. By an amendment ratified November 5, 1918 (Ga. L. 1917, p. 36), the said paragraph of the constitution was amended by fixing the salaries of the Justices of the Supreme Court and the Judges of the Court of Appeals at $5000 per annum each, by fixing the salaries of the judges of the superior courts at $4000 per annum, each payable out of the treasury of the State, continuing the same provision in effect as to the certain counties being authorized to pay the difference between the salary paid out of the treasury of the State so as to make a salary of $5000 per annum each for the judges of the superior courts, and by striking the words, "but the provisions of this section shall not affect the salaries of those now in office." Another amendment of 1918 (Ga. L. 1918, p. 94), ratified November 5, 1918, required Chatham County to pay the superior court judges of the Eastern Circuit $3000 per annum each, and authorized Fulton County to pay the judges of the superior courts of that county such sums in addition to the salaries paid by the State as might be deemed advisable. By the amendment of 1920 (Ga. L. 1920, p. 20), ratified November 2, 1920, the salaries of the Supreme Court Justices and the Judges of the Court of Appeals were fixed at $7000 per annum each, and for the judges of the superior courts $5000 per annum each out of the treasury of the State; the Counties of Clarke, Floyd, Sumter, Bibb, and Richmond, were authorized to supplement salaries of superior court judges by enough to make the

amount of $6000 per annum each; and Fulton County was authorized to supplement the salary of the judge of the Stone Mountain Circuit, or the judges of such other circuit as might thereafter be required to regularly preside therein, as would make the salary $6000 per annum; and said amendment also provided as follows: "That the Board of County Commissioners of Fulton County, or such other board of persons as may from time to time exercise the administrative powers of Fulton County, shall have power and authority to pay the judges of the Superior Court of Fulton County such sums, in addition to the salaries paid by the State, as said administrative authority or authorities may deem advisable, and the amounts so paid are declared to be a part of the court expenses of said county."

The essential question for decision in this case depends on a construction, not only of the aforementioned provision of the constitution, but also of the separate paragraph numbered 2 of article 6, section 13, which originally read as follows: "The General Assembly may, at any time, by a two-thirds vote of each branch, prescribe other and different salaries for any, or all, of the above officers, but no such change shall affect the officers then in commission." By an amendment ratified November 7, 1916 (Ga. L. 1916, p. 24), a proviso was added, authorizing the General Assembly to abolish fees accruing to the office of solicitor-general in any particular judicial circuit, and in lieu thereof to prescribe a salary for such office.

The words, "but the provisions of this section shall not affect the salaries of those now in office," were stricken from article 6, section 13, paragraph 1, of the constitution, by the amendment ratified November 5, 1918 (Ga. L. 1917, p. 36). Such deletion occurred prior to the present case, and there did not remain in paragraph 1 of the section and article of the constitution under consideration any express words prohibiting a change in the amount of salaries of judges then in commission. Nothing in any of the other language of said paragraph can, by inference or otherwise, be construed as having the same effect as the words which were stricken. Whatever restriction, if any, remained as to a change of salaries of judges must be gathered from some other provision of the constitution.

This brings us to paragraph 2 of the same section and article,

the applicable portion of which provides: "The General Assembly may, at any time, by a two-thirds vote of each branch, prescribe other and different salaries for any, or all, of the above officers, but no such change shall affect the officers then in commission." Clearly, the officers are those named in paragraph 1, among which are judges of the superior courts. But it must not be overlooked that the prohibition as to a change of salaries is a negative-dependent clause of an affirmative preceding authorization for the General Assembly to prescribe other and different salaries, the clause being separated only by a comma. In construing a constitutional provision, the ordinary signification shall be applied to words. Code, § 102-102; *Jones* v. *Darby,* 174 *Ga.* 71 (161 S. E. 835). The meaning of a clause depends upon the intention with which it is used as manifested by the context and considered with reference to the subject-matter to which it relates. *Stanley* v. *Sims,* 185 *Ga.* 518, 523 (195 S. E. 439).

There were two methods by which the judges of the Superior Court of Fulton County could have an increase beyond that of the $5000 per annum paid to them by the State, one of such ways being by statute giving an increase out of the treasury of the State as authorized by paragraph 2 of said section and article of the Constitution, and the other being by the provision of paragraph 1 thereof, which reads: "That the Board of County Commissioners of Fulton County, or such other board of persons as may from time to time exercise the administrative powers of Fulton County, shall have power and authority to pay the judges of the Superior Court of Fulton County such sums, in addition to the salaries paid by the State, as said administrative authority or authorities may deem advisable, and the amounts so paid are declared to be a part of the court expenses of said county." Unquestionably, the commissioners have authority to set the amount of such additional compensation. It does not take a two-thirds vote of the General Assembly or any action of that body to set the supplemental compensation which the judges may receive from the county. The constitution delegates that power directly to the county commissioners. After all, the key to the answer of the present question lies in the determination of the meaning of one sentence in the Constitution, to wit, "That the Board of County Commissioners of Fulton County, or such other board of persons as may from time

to time exercise the administrative powers of Fulton County, shall have power and authority to pay the judges of the Superior Court of Fulton County such sums, in addition to the salaries paid by the State, as said administrative authority or authorities may deem advisable, and the amounts so paid are declared to be part of the court expenses of said county." One cannot read the foregoing quoted language without being impressed by the particular words, "or such other board of persons as may from time to time exercise the administrative powers of Fulton County," and the words, "as said administrative authority or authorities may deem advisable." If there was no discretion to change or decrease the supplemental sums, the successor authorities of the Board of County Commissioners, if any, would be bound by the action of the previous board, and the freedom of action of the succeeding authorities in charge of the administrative affairs would be circumscribed. That there is freedom of action intended, is clearly illustrated by the words, "as said administrative authority or authorities may deem advisable." We think that the language of the constitutional provision gives discretion to the county commissioners as to when the supplemental compensation paid by the county to the judges of the superior court shall be increased, decreased, or changed. The taxes for counties, including taxes "to pay the expenses of courts," are levied annually and are not co-equal in term or time of payment with the four-year term of judges of the superior courts. The business of the court may increase or decrease within the period of a year's time or less, and under discretionary authority the county commissioners might equitably adjust the relation between county finances, work of the court, and taxes levied, so as to fit the needs of the situation with some flexibility. To construe the mentioned provisions of the constitution otherwise than as giving the commissioners of Fulton County an unqualified discretion to change the compensation to be paid to the judges of the superior court from the county treasury, would not only be a strained and unusual interpretation of all applicable language, but would also fail to give effect to the ordinary signification of the words used. As desirable as it might seem from the standpoint of judges of the Superior Court of Fulton County to have their compensation from the county safe from decrease during the term for which they are elected—the applicable constitutional pro-

visions do not require or authorize that kind of a construction. The salaries of judges of the superior courts payable out of the treasury of the State were clearly protected from change as to judges then in commission. We think that an entirely different situation prevails under the constitutional provisions in so far as the supplemental sums payable from the county treasury were involved. Reading together paragraphs 1 and 2 of section 13 of article 6 of the Constitution of Georgia as they existed at the time of the present case, we think that the prohibition contained in paragraph 2, that no change should affect the judges of the superior court then in commission, related only to salaries paid to judges of the superior courts out of the treasury of the State, and that the Board of Commissioners of Fulton County had the power and authority to change or decrease the supplemental sums payable out of the county treasury to the judges of the superior court, although the change or decrease occurred during the term and after a higher compensation from the county had been authorized and directed by resolution of the county commissioners at a previous session.

In this case we reach the same result as the majority opinion in *MacNeill* v. *Howard*, 185 *Ga.* 85 (194 S. E. 582), which involved facts and questions almost identical with those in the present case, although our reasons here are not altogether the same as were stated by the majority in that previous decision. If there is any inference in the majority opinion in the *Howard* case, supra, that the sum paid by Fulton County to a judge of the superior court of said county is not "salary" in any sense, or that for such reason alone the compensation paid by the county could be changed or decreased during a term of such superior court judge, we do not subscribe to such reasoning. We seriously doubt that the decision mentioned was intended to have any such construction or interpretation as the inference above stated. But we think that, with or without any technical distinction between "salary" and "compensation," the sums payable by Fulton County to its superior court judges may be changed or decreased at the will of the county commissioners of said county.

Views somewhat similar to those that we take in the present case were expressed in a dissenting opinion prepared by Mr. Justice Gilbert in *Freeney* v. *Brown*, 182 *Ga.* 818 (187 S. E. 40),

where Mr. Justice Bell also dissented and Mr. Justice Atkinson specially concurred; and in a dissenting opinion prepared by Mr. Justice Grice in *Best* v. *Mattox*, 185 *Ga.* 78 (194 S. E. 578), where Mr. Justice Bell also dissented. In the *Brown* case the majority held that, where the salaries of superior court judges of the Macon Judicial Circuit had been increased by the County Commissioners of Bibb County under a constitutional amendment authorizing such increase, the commissioners were without authority thereafter to decrease such salaries during the constitutional term of the judge. And in the *Mattox* case the majority ruled that where the Floyd County Commissioners increased the salary of the superior court judge under the constitutional amendment authorizing the county to supplement the salary of the judge of the superior court, the increased salary became the constitutional salary of the judge, which might be changed only by a two-thirds vote of the General Assembly; and that the county commissioners had no authority to terminate or reduce the supplemental salary voted by them, even as to a subsequent term. Both the *Brown* and *Mattox* cases dealt with that portion of article 6, section 13, paragraph 1 of the constitution as amended November 2, 1920 (Ga. L. 1920, p. 20) as follows: "The Board of County Commissioners of the Counties of Clarke, Floyd, Sumter, Bibb, and Richmond . . may supplement from their respective county's treasuries the salaries of the judges of the circuits of which they are a part, by such sums as may be necessary with salaries paid each of said judges from the State treasury, to make a salary of $6000 each per annum of such judges; and such payments are declared to be a part of the court expenses of said counties, and such payments shall be made to the judges now in office, as well as to their successors." A different portion of the same paragraph of the constitution, as amended, dealing with separate and distinct language is involved in the present case. To that extent there is such a distinction between the instant case and the *Brown* and *Mattox* cases that the latter-named cases would not control the case now under review. Also, as previously pointed out, the *Brown* and *Mattox* cases were not decisions concurred in by all the Justices. On account of the distinction stated above, we do not feel that it is necessary here to criticise the majority opinions in the *Brown* and *Mattox* cases; but if anything in those

cases is contrary to the ruling in the present case, then we respectfully refuse to follow those earlier cases.

This court, in *Culberson* v. *Watkins,* 156 *Ga.* 185 (119 S. E. 319), held that the judges of the Superior Court of Fulton County, who were authorized by the act of 1915 (Ga. L. 1915, p. 35) to appoint for a term of six years and fix the salary of a judge of the juvenile court, had no power during the term to alter the salary of such judge. We think that a patent distinction between the facts of that case and those of the present case is illustrated by quoting from the *Culberson* case a portion of the opinion, as follows: "Section 21 of the act of 1915, creating juvenile courts in counties of this State having a population greater than 60,000 (acts 1915, p. 43) provides that: 'The judge of the superior court of the county shall appoint the judge of said juvenile court for a term of six (6) years, and shall fix the compensation.' This is a single official act in which all of the constituent elements are to be completed at one and the same time—at the time of the appointment. The term is for six years, and the compensation is to be fixed for the term at the time of the appointment. When the judge of the superior court 'fixes' the salary for the term, his power of 'fixing' is exhausted for that term of six years." No such language is contained in the constitutional provisions being dealt with in the present case, and the *Culberson* case is not in point.

The trial court did not err in refusing a mandamus absolute and in dismissing the petition.

*Judgment affirmed on main bill of exceptions; cross-bill dismissed. All the Justices concur, except Atkinson and Wyatt, JJ., who dissent.*

JENKINS, Presiding Justice, concurring. While I took a different view of the identical legal question here involved, as evidenced by a dissent filed in *MacNeill* v. *Howard,* 185 *Ga.* 85 (supra), since the question is a doubtful one, and because I feel that I should give due deference and consideration to the previous decision rendered by a majority of the court in the previous case, I deem it my duty to join in the majority opinion as delivered.