## S99A1229. GEORGIA COUNCIL OF PROFESSIONAL ARCHAEOLOGISTS et al. v. BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA et al.
### (523 SE2d 879)

BENHAM, Chief Justice.

In December 1997, the Board of Regents of the University System of Georgia sold 297 acres of real property to the Development Authority of Gordon County. On July 1, 1998, appellants, the Georgia Council of Professional Archaeologists and the Society for Georgia Archaeology, filed suit in the Superior Court of Gordon County, contending that the sale was subject to the Georgia Environmental Policy Act (GEPA), OCGA § 12-16-1 et seq., since it involved the sale of more than five acres of state-owned land. See OCGA § 12-16-3 (7). Believing that the Board of Regents had not complied with GEPA, appellants sought a writ of mandamus to compel the Board of Regents to perform its obligations under GEPA and a declaratory judgment that the Board had violated GEPA; that the sale was null and void; that GEPA required state departments and agencies to identify the purchaser's intended use of property being sold by the department or agency and make an evaluation thereon; and that state departments and agencies could not avoid their GEPA duty by extracting a promise from the purchaser to do a GEPA evaluation after the sale.

The trial court dismissed appellants' complaint after finding that the sale of 297 acres did not meet the statutory definition of "a

proposed governmental action which may significantly adversely affect the quality of the environment" and, even if it did, the decision of the responsible government official did not create a cause of action on behalf of the two plaintiff corporations. See OCGA § 12-16-5 (c). The trial court denied the request for declaratory relief, finding that the parties did not face uncertainty since all the conduct had occurred. The trial court declined to exercise its equity power to set aside the deed, finding that the Board of Regents had complied with GEPA, and that appellants had taken no legal action until six months after the sale was completed, though they had been aware of the proposed sale five months before it occurred. The trial court denied the request for mandamus because the responsible government official had not abused his exercised discretion, and the decision to proceed with the proposed governmental action did not create a cause of action in the plaintiffs. Id. This Court granted appellants' application for discretionary review and posed the following questions:

1. Does OCGA § 12-16-5 (c) bar plaintiffs' action challenging the decision of the responsible government official that the proposed governmental action at issue was not a "proposed governmental action which may significantly adversely affect the quality of the environment?"

2. If OCGA § 12-16-5 (c) does not bar the action, what remedy is available for plaintiffs to challenge the responsible government official's determination that a proposed governmental action is not one which may significantly adversely affect the environment's quality?

3. What standard of review applies to the superior court's review of the responsible government official's decision?

4. Applying that standard, was the superior court correct in affirming the decision of the responsible government official?

GEPA requires the "responsible official" of a "government agency" to determine if a "proposed governmental action" is "a proposed governmental action which may significantly adversely affect the quality of the environment."[1] OCGA § 12-16-4. If it is so deter-

[1] OCGA § 12-16-3 defines the applicable terms as follows:

(1) "A proposed governmental action which may significantly adversely affect the quality of the environment" means a project proposed to be undertaken by a government agency or agencies, for which it is probable to expect a significant adverse impact on the natural environment . . .

(5) "Government agency" means any department, board, bureau, commission, authority, or other agency of the state . . .

(7) "Proposed governmental action" means any proposed land-disturbing activity by a government agency or funded by a grant from a government agency, any proposed sale or exchange of more than five acres of state owned land . . .

(8) "Responsible official" means the official or body in charge of or authorized to act on behalf of a government agency.

mined, the governmental agency responsible for the project must prepare an environmental effects report;[2] publish notice in the legal organ of affected counties that the environmental effects report has been prepared; make the report available to the public upon request; and hold a public hearing if, within 30 days of the publication of the notice in the legal organ, the responsible official receives written requests for a hearing from at least 100 Georgia residents. OCGA §§ 12-16-4; 12-16-5. Prior to the sale of the land at issue, the responsible official decided there was no significant adverse environmental impact from the sale of the property. As a result, no environmental effects report was made, no public notice was published, and no public hearings were held. Appellants maintain that, contrary to the determination of the responsible government official, the sale of the land was a "proposed governmental action which may significantly adversely affect the quality of the environment" which required the responsible official to have an environmental effects report prepared and to notify the public.

It is clear that the sale of more than five acres of state-owned land is a "proposed governmental action" under OCGA § 12-16-3 (7) and that, under OCGA § 12-16-3 (5), the Board of Regents is a "government agency" subject to GEPA. Compare *Thornton v. Clarke County School District*, 270 Ga. 633 (1) (514 SE2d 11) (1999) (a school district is not a "government agency" under GEPA). At issue in this case is the propriety of the responsible official's decision that the proposed governmental action was not a "proposed governmental action which may significantly adversely affect the quality of the environment." The initial question we must address is whether appellants' suit contesting that decision is barred by OCGA § 12-16-5 (c), which states:

> The decision of the responsible official to proceed with the proposed governmental action shall not create a cause of action in any person, corporation, association, county, or municipal corporation; provided, however, the actions of the responsible official in the procedure of giving notice by publication of the environmental effects report and notice by publication of the decision made based upon the report and public comments, if any, may be challenged pursuant to . . . the "Georgia Administrative Procedure Act" if the responsible official acts on behalf of a government agency which is subject to that act or by mandamus otherwise; but any such

---

[2] An "environmental effects report" is statutorily defined as "a report on a proposed governmental action which may significantly adversely affect the quality of the environment." OCGA § 12-16-3 (4).

challenge must be commenced within 30 days after the date notice of the responsible official's decision . . . is first published in a legal organ of any affected county or counties.

Contained within the subsection is a clear statement that the responsible official's decision to proceed with the proposed governmental action does not create a cause of action, followed by a limited waiver of sovereign immunity.[3] Under GEPA, the responsible official may make the decision "to proceed with the proposed governmental action" at two points: when the official decides that the proposed governmental action is not one which may significantly adversely affect the quality of the environment; and after receipt of the written comments and/or the public hearing that followed the official's determination that the proposed governmental action may adversely affect the quality of the environment. Under the statute, the responsible official's decision to proceed with the governmental action because it is not probable to expect a significant adverse impact on the quality of the environment may not serve as the basis of a judicial action against the responsible official or the government agency on behalf of which the responsible official is acting. Where, as here, a statute "is plain and susceptible of but one natural and reasonable construction, the court has no authority to place a different construction upon it, but must construe it according to its terms." *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981). Accordingly, we conclude that OCGA § 12-16-5 (c) bars appellants' lawsuit, and the trial court did not err when it dismissed that portion of appellants' complaint which sought to challenge the responsible official's decision to proceed with the project.[4]

Our holding that OCGA § 12-16-5 (c) bars appellants' challenge to the responsible official's decision that the proposed government action is not one from which it is probable to expect a significant adverse impact on the environment is supported by the additional language in OCGA § 12-16-5 (c), which limits the scope of a permissible legal challenge under GEPA and sets out the time period within

---

[3] Under the doctrine of sovereign immunity, the State cannot be sued without its consent. The doctrine of sovereign immunity enjoys constitutional status and therefore cannot be abrogated by this Court. *State Bd. of Ed. v. Drury*, 263 Ga. 429 (1) (437 SE2d 290) (1993). Since the decision to waive sovereign immunity is a voluntary act on the part of the State, the State may prescribe the terms and conditions on which it will consent to be sued, and the manner in which the suit will be conducted. Id.

[4] Assuming without deciding that the declaratory judgment portion of appellants' complaint is not barred by sovereign immunity, we conclude that the trial court did not err when it declined to issue a declaratory judgment since, the sale of the land having been completed, there was neither an actual nor a justiciable controversy which would authorize entry of a declaratory judgment. OCGA § 9-4-2; *Baker v. City of Marietta*, 271 Ga. 210 (1) (518 SE2d 879) (1999).

which such a challenge must be filed. The statute authorizes a legal challenge only to the *procedure* followed by the responsible official in giving the notices required by OCGA §§ 12-16-4 (c) and 12-16-5 (b) after the official has determined that the proposed governmental action may significantly adversely affect the quality of the environment. The period within which the limited class of permitted suit may be filed commences with the publication of notice of the responsible official's decision following receipt of the public's written and verbal comments regarding the proposed government action that has been determined by the responsible official to be one which may significantly adversely affect the quality of the environment. Both the action which can form the basis of a permitted lawsuit and the time period within which such a suit must be filed take place well after the responsible official's decision that forms the basis of appellants' complaint, leaving us to conclude that the statute shields the responsible official's initial decision from judicial review.

In light of our determination that OCGA § 12-16-5 (c) bars appellants' suit, we do not address the remaining questions we posed in granting appellants' application for discretionary review since they were dependent upon an initial resolution that § 12-16-5 (c) did not bar appellants' suit.

*Judgment affirmed. All the Justices concur, except Hunstein, J., who dissents.*

FLETCHER, Presiding Justice, concurring.

In adopting the Act, the General Assembly declared that "[t]he protection and preservation of Georgia's diverse environment is necessary for the maintenance of the public health and welfare and the continued viability of the economy of the state and is a matter of the highest public priority"[5] and "[s]tate agencies should conduct their affairs with an awareness that they are stewards of the air, land, water, plants, animals, and environmental, historical, and cultural resources."[6] I agree with these statements and believe that virtually all Georgians do as well. In order to attain the important goals implicit in the Act's declaration, however, there must be some check and balance, a reasonable and responsible way to challenge the "stewards'" determination of no significant adverse environmental effect. Unfortunately, the Act specifically prohibits any challenge and precludes the reasonable check and balance that appellants seek. Therefore, I am compelled to concur.

---

[5] OCGA § 12-16-2 (1).
[6] OCGA § 12-16-2 (2).

HUNSTEIN, Justice, dissenting.

The issue in this appeal is whether the determination by a responsible official based on erroneous legal advice that a proposed government action does *not* significantly adversely affect the environment can be challenged under the Georgia Environmental Policy Act ("GEPA"). OCGA § 12-16-1 et seq. Because the majority's holding, which essentially concludes that such decisions are unreviewable and aggrieved parties are without legal redress, is unsupported by the language of GEPA and is contrary to the stated legislative intent, I respectfully dissent.

The record establishes that the Board of Regents of the University System of Georgia decided to sell a tract of approximately 300 acres of property to the Development Authority of Gordon County to be developed into an industrial park. The property, known as the "Rome Crossroads," contains Native American archaeological artifacts and a pre-Civil War cemetery; it was the site of a Civil War Battle; and a third of the property is part of the Oothcalooga Creek flood plain. The parties agree that Philip Worley, as the responsible official acting on behalf of the Board of Regents,[7] obtained legal advice from an assistant vice president for legal affairs in the University system and, based on this advice, determined that he was not required under GEPA to consider the Development Authority's intended use for the Rome Crossroads in evaluating the environmental impact of the sale of this property. Rather, Worley looked solely to the impact of the sale itself, i.e., the transfer of the deed and other documents, when making his determination under GEPA that there were no significant adverse effects on the environment as a result of the proposed governmental action. It is uncontroverted that this determination was not the result of a factual evaluation of the transaction but was exclusively the result of a legal interpretation of GEPA by a University system employee. The actual environmental effect of the transaction was acknowledged by Worley in an internal memo, accompanying an evaluation form, in which he noted that "[i]n reality this sale will eventually have a Major Adverse effect on the environment."

GEPA was enacted in recognition that "[t]he protection and preservation of Georgia's diverse environment is necessary for the maintenance of the public health and welfare and the continued viability of the economy of the state." OCGA § 12-16-2 (1). The Legislature stated that the protection and preservation of Georgia's environment "is a matter of the highest public priority," id., and decided to promote this goal by requiring State agencies to "conduct their affairs

---

[7] The Attorney General has held that the Board of Regents is an entity covered under GEPA. 1993 Op. Att'y Gen. No. U93-9.

with an awareness that they are stewards of the air, land, water, plants, animals, and environmental, historical, and cultural resources." Id. at (2). To effectuate this goal, the Legislature determined that "[e]nvironmental evaluations should be a part of the decision-making processes of the state." Id. at (3). The decision-making process utilized by Worley in this case, however, utterly thwarted the express legislative purpose of GEPA. Rather than fulfilling the stewardship duties set forth in GEPA, Worley utilized a sophistic legal interpretation which conveniently allowed the Board of Regents to avoid implementing the requirements established by the Legislature to protect and preserve this State's environment.

The majority does not address and condemn the fallacy behind the legal argument used by Worley, i.e., that the environmental impact of the sale of property extends no farther than the signing of closing documents. Instead, the majority focuses solely upon OCGA § 12-16-5 (c) to uphold the dismissal of appellants' suit because appellants failed to file suit within 30 days of Worley's decision to proceed with the sale. The majority's holding, however, is not a correct application of OCGA § 12-16-5 (c) within the context of the entire Act. See *Thomas v. MacNeill*, 200 Ga. 418, 424 (37 SE2d 705) (1946) (meaning of statutory clause depends upon the intention with which it is used as manifested by its context and considered with reference to the subject matter to which it relates). A review of GEPA reveals that the Act sets forth in detail the actions to be followed once a responsible official has determined that a proposed governmental action may significantly adversely affect the environment. See OCGA §§ 12-16-4, 12-16-5. These actions allow for the participation and input by citizens and government entities into the decision-making process. See OCGA § 12-16-2 (4), requiring environmental effects reports to be made publicly available so as to "facilitate the fullest practicable provision of timely public information, understanding, and participation in the decision-making processes of the state." Only after there has been compliance with these public participation requirements may the responsible official render his or her final decision to proceed with the proposed governmental action. It is at this point that the provisions of OCGA § 12-16-5 (c) come into play, so as to require a challenge to the responsible official's decision to be made within 30 days after the decision is "first published in a legal organ of any affected county or counties."[8]

---

[8] OCGA § 12-16-5 (c) provides, in pertinent part:
The decision of the responsible official to proceed with the proposed governmental action shall not create a cause of action in any person, corporation, association, county or [city]; provided, however, the actions of the responsible official in the procedure of giving notice by publication of the environmental effects report and notice

OCGA § 12-16-5 (c) has no application in those instances in which a responsible official avoids initiating the public participation steps set forth in GEPA by concluding initially that the proposed governmental action will not significantly adversely affect the environment. The majority opinion has violated an elementary rule of statutory construction by lifting a segment of GEPA out of context and construing it without consideration of all other parts of the statute. See *City of Jesup v. Bennett*, 226 Ga. 606, 609 (176 SE2d 81) (1970). That is the situation in this case, where there was no published environmental effects report, no public hearings, and no publication of Worley's decision solely because those proceedings were preempted by the decision that the sale of the Rome Crossroads would not significantly adversely affect the environment.[9] How could affected parties know when to commence a challenge under the APA if there is never a publication of the responsible official's decision?

Nothing in the language of OCGA § 12-16-5 (c) supports the majority's conclusion that its provisions bar appellants' suit under the facts in this case. The decision of the responsible official which "shall not create a cause of action" under GEPA unless that decision is challenged pursuant to the APA within 30 days after the decision's publication is unmistakably a decision made only after the environmental effects report is published in the legal organ of each county where the proposed government action will occur, after a requested public hearing has been conducted, after the responsible official has considered the comments received, rendered a decision to proceed with the proposed action, and published that decision in the legal organ of the affected counties. OCGA §§ 12-16-4, 12-16-5. Accordingly, I cannot agree with the majority that OCGA § 12-16-5 (c) applies to limit a challenge to the decision to proceed with a proposed government action under GEPA in those situations where the responsible official has sidestepped GEPA's notice requirements by concluding the proposed action has no significant, adverse environmental effects.

---

by publication of the decision made based upon the report and public comments, if any, may be challenged pursuant to [the APA] if the responsible official acts on behalf of a government agency which is subject to [the APA] or by mandamus otherwise; but any such challenge must be commenced within 30 days after the date notice of the responsible official's decision made pursuant to subsection (b) of this Code section is first published . . . .

[9] Counsel for the Board of Regents stated at the hearing on the motion to dismiss that in regard to the statutory requirements of notice by publication of the existence of an environmental effects report and an opportunity for the public to be heard, "[n]one of that was done in this case because of the initial finding by Mr. Worley that the sale would not have an adverse effect," although counsel candidly admitted that "Mr. Worley has acknowledged that the construction of the development of the industrial park would have an adverse effect" on the Rome Crossroads property.

Although GEPA does not detail the procedure to be followed to challenge a responsible official's decision to proceed with a proposed government action which was made under factual circumstances such as those present here, that does not mean aggrieved parties are without a remedy. I would hold that appellants' suit, in which they sought a declaration of the respective rights of the Board and themselves under GEPA, a mandamus to compel the performance of GEPA requirements by Worley, injunctive relief and, in the alternative, an opportunity to pursue an appeal under the APA, represents the proper avenue for obtaining legal redress under these circumstances.

"Although appellate courts generally do not construe statutory language that is plain and unequivocal, judicial construction is required when words construed literally would defeat the legislature's purpose." *Echols v. Thomas*, 265 Ga. 474, 475 (458 SE2d 100) (1995). The intent of the Legislature is manifest within OCGA § 12-16-2. GEPA was enacted to protect and preserve Georgia's environment, not to authorize environmentally unsound decisions based on sophistic legal advice that the impact of the sale of property goes no farther than the transfer of deeds. GEPA is meaningless if a responsible official can avoid all public oversight and legal challenge to a proposed government action simply by concluding that a proposed government action will have no significant adverse effect on the environment. Under the majority's interpretation, a State agency can render GEPA meaningless, preempting the application of GEPA requirements by making an initial decision that no significant adverse effect will follow from a proposed government action and thus rendering a decision which will be legally unchallengeable since affected parties will have no means of learning of the decision within the 30 day window of opportunity for commencing a suit under the APA. GEPA is rendered meaningless because under this interpretation, State agencies will have no reason to comply with GEPA's provisions. Why go through the expense and delay of preparing an environmental effects report, holding public hearings, publishing notices, when all that effort can be avoided merely by opting to "decide" that the proposed government action will have no significant adverse effect on the quality of the environment? The sophistic legal reasoning utilized by Worley can easily be applied to every type of proposed government action subject to GEPA's requirements so that the Act can be obviated simply by responsible officials concluding that they need look no farther than the signing of the contract or deed or other document when making the determination whether a proposed action would significantly, adversely affect the quality of the environment of this State.

This Court's interpretation of GEPA must be based on the recog-

nition that the protection and preservation of this State's diverse environment "is a matter of the highest public priority." OCGA § 12-16-2 (1). The majority's interpretation of GEPA violates basic rules of statutory construction because it does not implement the express intent of the Legislature, it lifts individual provisions within the statute out of context of the act as a whole, and it fails to avoid a construction which renders GEPA meaningless. Because I cannot agree to a statutory construction of GEPA which defeats the primary purpose of the legislation, I dissent.

DECIDED NOVEMBER 15, 1999 —
RECONSIDERATION DENIED DECEMBER 16, 1999.

*Thomas H. Beisswenger, Douglas P. Haines,* for appellants.
*Thurbert E. Baker, Attorney General, Ray O. Lerer, Senior Assistant Attorney General, Roland F. Matson, Assistant Attorney General, William R. Thompson, Jr.,* for appellees.